Phenix National Bank, Respondent, *v.* James M. Waterbury et al., Appellants.

Bankruptcy — "fixed liabilities," released by a discharge in bankruptcy, defined — obligations which may arise under an executory contract are not "fixed liabilities" which may be discharged.

Under the provisions of section 63 of the Bankruptcy Act authorizing debts of the bankrupt "which are a fixed liability as evidenced by a judgment or instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not," to be proved and allowed against his estate, two things must concur in order that such a debt may be provable, viz., there must be a fixed liability and it must be absolutely owing at the time of the filing of the petition in bankruptcy, although the time of the payment may be deferred.

Defendants agreed to purchase and plaintiff agreed to sell certain shares of stock on a certain specified date with an option to defendants to make the purchase at an earlier date.  Previous to the date so fixed, defendants, not having exercised the option to purchase, were adjudicated bankrupts.  *Held,* that at the time of the adjudication no liability had arisen on the part of defendants which could be said to be one "absolutely owing" by them; that their bankruptcy was not necessarily a renunciation of their contract or a repudiation of their ability to perform, and their discharge did not affect their obligations under the contract.

*Phenix Nat. Bank* v. *Waterbury,* 123 App. Div. 453, affirmed.

(Argued December 1, 1909;  decided January 4, 1910.)

11

Appeal from a judgment entered February 6, 1908, upon an order of the Appellate Division of the Supreme Court in the first judicial department overruling defendants' exceptions ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for plaintiff on the verdict directed by the trial court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* and *Charles L. Atterbury* for appellants. The defendants' discharges in bankruptcy are a complete defense to this action, as their obligation under the contract was provable in the bankruptcy proceedings, of which plaintiff had notice and knowledge. (*Lovell* v. *S. L. L. Ins. Co.*, 111 U. S. 264; *Carr* v. *Hamilton*, 129 U. S. 265.) By the terms of the written contract the defendants had definitely obligated themselves to pay the sum therein stated, with interest, on or before the 1st day of May, 1900. The fact that by the terms thereof the defendants had until May 1, 1900, to perform their contract to purchase the stock does not alter the character of the debt as a provable one. It was a fixed liability, absolutely owing at the time the petition was filed, and consequently was provable. (Collier on Bankruptcy [6th ed.], 507, 510, 511; *Phelps* v. *Clasen*, 19 Fed. Cas. 445; *Matter of Swift*, 112 Fed. Rep. 321; Loveland on Bankruptcy [3d ed.], 345; *Cobb* v. *Overman*, 109 Fed. Rep. 69; *Matter of Rothenberg*, 140 Fed. Rep. 798; *Matter of Smith*, 146 Fed. Rep. 823.) Assuming that at the time of the filing of the petitions in bankruptcy the contract was essentially an agreement for sale and purchase in the future, and not a present sale with postponement of payment, the effect of the filing of the petition, by operation of law, was to make the obligation of the defendants under the agreement at once due and owing and consequently a debt provable in bankruptcy. (*Hochster* v. *Delatour*, 2 E. & B. 678; *Lovell* v. *Ins. Co.*, 111 U. S. 264; *Chicago* v. *Tilley*, 130 U. S. 146; *Roehm* v. *Horst*, 178 U. S. 1; Collier on Bankruptcy [6th ed.], 515; Loveland

on Bankruptcy [3d ed.], 363 ; *Matter of Swift*, 112 Fed. Rep.
315 ; *Matter of Pettingill Co.*, 137 Fed. Rep. 143 ; *Matter
of Adams*, 130 Fed. Rep. 381 ; *Matter of Stern*, 116 Fed.
Rep. 606 ; *Burtis* v. *Thompson*, 42 N. Y. 246 ; *Windmuller*
v. *Pope*, 107 N. Y. 674.)

*William N. Cohen, Frederick B. Hunt* and *George Coffing
Warner* for respondent. When the petition was filed, the
debt sought to be discharged was not a fixed liability. (*Dun-
bar* v. *Dunbar*, 190 U. S. 340 ; *Matter of U. B. Co.*, 15 Am.
B. R. 390.) In order to be provable and dischargeable, a debt
must, at the time of filing the petition, be " absolutely owing "
(although not necessarily then payable) if it is a fixed liability
evidenced by a judgment or instrument in writing. (*Bardes*
v. *Hawarden Bank*, 178 U. S. 524 ; *Pirie* v. *C. T. & T. Co.*,
182 U. S. 438 ; *Matter of Marks*, 6 Am. B. R. 641.) Under
the terms of the contract in the case at bar, no debt could
have come into existence until the time for performance
arrived. (*Ames* v. *Moir*, 138 U. S. 306.) Under the terms
of the contract in the case at bar, no debt could have arisen
in favor of the plaintiff as against the defendants even on the
arrival of the time fixed in the contract for performance, or at
any other time, unless plaintiff had first made a tender.
(*Vandegrift* v. *C. E. Co.*, 161 N. Y. 435 ; *Columbia Bank*
v. *E. L. Assur. Society*, 79 App. Div. 601 ; *Marks* v. *E. L.
Assur. Society*, 109 App. Div. 675 ; *Matter of Imperial
Brewing Co.*, 143 Fed. Rep. 579.)

GRAY, J. The plaintiff seeks to recover of the defendants
the purchase price of certain shares of capital stock of the
Waterbury & Marshall Company. The agreement, set out in
the complaint as the basis of its demand, was made in 1894
between it and the defendants Waterbury and Marshall. In
it, these defendants, as parties of the first part, " jointly and
severally promise and agree to purchase from the party of the
second part, (this plaintiff), on the first day of May, 1900, or
on any earlier date, at their option, two hundred and fifty

(250) shares of the preferred capital stock of the Waterbury & Marshall Company, a corporation incorporated under the laws of the State of New Jersey, and to pay therefor to the party of the second part the sum of Twenty-five thousand ($25,000) dollars, and interest on said sum, at the rate of six per centum per annum from the second day of April, 1894, to the said first day of May, 1900, or to such earlier date as the parties of the first part may elect to purchase said stock." On its part, the plaintiff "promises and agrees to sell and deliver to the parties of the first part said two hundred and fifty (250) shares of said stock on the first day of May, 1900, or on such earlier date as the said parties of the first part may elect to purchase the same, upon receiving payment therefor as aforesaid." Further provisions of this agreement relate to the events of cash, or stock, dividends, or of redemption of the stock sold, and are not material to the controversy. The defendants admitted making the agreement and, as a defense to the action, pleaded a discharge in bankruptcy from all their debts, including their indebtedness under the said contract. Upon the trial, the defendants admitted their failure to perform their agreement and proved their adjudication as bankrupts on March 6, 1899, and the decree discharging them, in May, 1900, from all debts and claims, "made provable" by the Bankruptcy Act "and which existed on the 6th day of March, 1899." The trial court directed a verdict for the plaintiff and that determination has been affirmed at the Appellate Division, by a divided court.

I think that the determination made below, that the defendants' discharge in bankruptcy did not affect their obligations under the contract, is correct. The question, necessarily, turns upon the construction, which must be given to that provision of the Bankruptcy Act, which defines what are a bankrupt's provable debts, from which his discharge in bankruptcy will release him. The provision is found in section 63 and reads that " debts of the bankrupt may be proved and allowed against his estate, which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at

the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as were not then payable and did not bear interest." The balance of the section is not material to the discussion.

By this provision of the Bankruptcy Act, it is evident that two things must concur, in order that a debt of the bankrupt shall be provable. There must be a fixed liability, as evidenced by a judgment, or a written instrument, and it must be absolutely owing at the time of the filing of the petition in bankruptcy; however the time of payment may be deferred. Looking at the contract in question in the light of the provision, we find that there was neither a present sale, nor a present purchase, of the stock by the parties, when making it, and if that be so, how could there arise any "liability", "absolutely owing", until, by efflux of time, or an exercise of the defendants' option, the contract matured? The agreement of each party was one which had relation, exclusively, to the future, whether as to obligation, or as to payment. The defendants promised to purchase the stock in 1900, (reserving an option to do so at an earlier date), at a price measured by the sum of $25,000 and the amount of interest, at the rate of six per cent, which would have accrued on that sum from April 2nd, 1894. The plaintiff promised to sell the stock to the defendants in 1900, (or at an earlier date; if the defendants exercised their option). The agreement provided for a future transaction and, meanwhile, if the stock described was then held in plaintiff's possession, its property in it remained unaffected. Until May 1st, 1900, the plaintiff undertook to be ready to sell and deliver such an amount of stock, if called for, and could have no claim against the defendants, prior thereto, or to such a call. The defendants were under no obligation to purchase the stock from the plaintiff before May 1st, 1900; unless they chose to do so. When, therefore, as the result of the filing of the petition in bankruptcy, the defendants were adjudicated bankrupts, in 1899, the situation

under the contract was that, as yet, no liability had arisen, which, within the very precise definition of the Bankruptcy Act, could be said to be one "absolutely owing" by them. Ordinarily, the insolvency of a party to an executory contract of sale is not equivalent to a breach. (*Pardee* v. *Kanady*, 100 N. Y. 121; *Vandegrift* v. *Cowles Engineering Co.*, 161 ib. 435, 444.) If, however, the adjudication in bankruptcy could have been treated by the plaintiff as a breach, or renunciation, of the contract, from the impossibility of performance created by the bankrupts before performance was due, then the plaintiff's claim would have been for the damages. But, as that was an optional matter, it was not obliged to present such a claim and could abide its time, and, unless called upon previously by the trustee in bankruptcy, or the defendants, make tender of the stock at the date fixed for its purchase and delivery. I do not think that the bankruptcy of the defendants was, necessarily, to be considered as equivalent to a renunciation by them of the contract, or to a repudiation of their ability to perform. It was susceptible of being regarded as one holding out a possible promise of future profit. If it had been then profitable, it was within the power of the trustee in bankruptcy to adopt it and to have exercised the reserved option, by calling upon the plaintiff for the stock. Short of such action, there was no way by which any obligation, represented by the contract, could have been altered from a purely contingent liability to one "absolutely owing" by the defendants. There could be no inception of an absolute indebtedness prior to the day in May, 1900; unless, prior to that time, there was a demand for the stock, followed by its delivery. Assuming that the plaintiff could have elected to prove a claim for damages as for a breach of the contract, if the trustee in bankrupty did not elect to keep it, within the cases of *In re Pettingill & Co.*, (137 Fed. Rep. 143), and of *In re Neff*, (157 ib. 57), how can that affect the question, whether any "liability" was "absolutely owing" by the bankrupts? It was a matter of election on the part of the plaintiff, purely.

In the case of *Ames* v. *Moir*, (138 U. S. 306), referred to in the opinion of the Appellate Division, the Federal Supreme Court passed upon the question, whether a contract of the parties, not unlike the present one, created a debt at the time of its execution. By a written agreement between Ames and Moir, Ames agreed to purchase of Moir certain high wines at a specified price, under these conditions of sale: " the buyer can call from July 1st to 20th of same month by giving three days' notice, and if not called for by the 20th of July the seller has the privilege of delivering up to the end of July by giving three days' notice," etc. Ames made a call before the 20th and Moir delivered the wines in accordance therewith. Ames was insolvent at the time and managed to dispose of the goods to others before the demand of payment by Moir's agent. In fact, Ames perpetrated a fraud upon Moir and it was because of the fraud that the court, in a subsequent suit by Moir against Ames for the value of the goods, held the debt to have been exempted from the operation of the discharge in bankruptcy; which Ames had pleaded in defense. In the course of the opinion, however, it was said that " the writing referred to did not, in itself, create a debt within the meaning of the Bankruptcy Act. It could not become effective as an instrument creating a debt in favor of plaintiffs until, pursuant to a call by defendant prior to July 20, they delivered, or offered to deliver, to him, (Ames), the high wines he agreed to take at the price stipulated, or — the defendant (Ames) failing to make a call for them within the time limited for his doing so — until the high wines were delivered, or tendered, to him by the plaintiffs, after the 20th and before the end of the month of July. When the plaintiffs delivered, or offered to deliver, the high wines at the defendant's place of business on the 18th of July, in fulfillment of the agreement of June 9th, and defendant failed to pay for them, then, and not before, was a debt created within the meaning of the Bankruptcy Act." (p. 311.) This expression of opinion is quite pertinent to the conditions in the present case; for the plaintiff could make no tender of

the stock until the time fixed in the contract and, therefore, could create no prior indebtedness in its favor. Such an indebtedness, under the contract, could not arise until the plaintiff had the right to deliver the stock, or the defendants had caused the contractual obligation to mature by an exercise of the option reserved.

For these reasons, as for those well expressed by Mr. Justice Scott, speaking for the majority of the Appellate Division, I think that the judgment should be affirmed.

Cullen, Ch. J., Edward T. Bartlett, Haight, Willard Bartlett, Hiscock and Chase, JJ., concur.

Judgment affirmed, with costs.