FREDERICK E. SHAW, assignee, *vs.* UNITED SHOE MACHINERY COMPANY & another.

Suffolk.   January 19, 1915. — March 9, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Assignment,* For benefit of creditors. *Contract,* Construction. *Insolvency.*

Where one has possession of machinery under agreements in writing in the nature of leases or license agreements which among other things provide that, "if the lessee . . . executes any . . . assignment for the benefit of his creditors . . . all leases or licenses to use machinery then existing . . . shall at the option of the lessor cease and determine, and the possession . . . of all machinery the leases or licenses of which are so terminated, shall thereupon revest in the lessor free from all claims or demands whatsoever," and also provide that, upon the termination of the leases or agreements, the lessee shall become liable to pay certain return charges and charges for repairs and cartage, if the lessee or licensee makes an assignment for the benefit of his creditors which provides that debts provable thereunder are such as are provable under the insolvency laws of this Commonwealth, and thereafter the lessor or licensor exercises his option and retakes possession of the machines from the assignee and assents to the assignment, the claim of the lessor or licensor for the return charges and charges for repairs and cartage are not claims which he has a right to prove against the estate in the hands of the assignee, because they were not debts "absolutely due" under R. L. c. 163, § 31, at the time of the assignment.

BILL IN EQUITY, filed in the Superior Court on March 23, 1914, by the assignee for the benefit of the creditors of the Burnham Shoe Company, Inc., against two assenting creditors, alleging in substance that the claims proved by the defendants included claims under certain shoe machinery leases or license agreements which the plaintiff had disallowed; that the defendants had refused to accept dividends based on a calculation of their claims

which did not include the amounts disallowed by the plaintiff; that the plaintiff "long since" had "been under obligation to make distribution to the other assenting creditors" and was "now imminently liable to become involved in litigation with them and put to expense . . . and said trust estate thereby dissipated and squandered;" that it was "the duty and obligation of the defendants and each of them as assenting creditors . . . to accept when offered the dividends payable upon their legal and just claims as determinable at the date of said assignment, and not to obstruct, hinder and delay the administration of said estate;" that the plaintiff was desirous of and stood "ready to perform and execute forthwith his full duty under the terms of said assignment, but" wrongfully was prevented by the defendants, to his great damage and annoyance, and that of the other assenting creditors; that the plaintiff had no adequate remedy at law, and that irreparable damage would result unless the relief prayed for should be given.

The prayers of the bill were that the court should construe the provisions of the leases and agreements in question, should determine the rights and liabilities of the respective parties, should ascertain and determine the proper and just amount of the defendants' claims under the provisions of the leases and agreements; that, if the court should be of the opinion that the defendants or either of them were entitled to a dividend upon their charges and claims arising, occurring and accruing after the date of the assignment, the just and true amount or amounts of such claims might be ascertained in accordance with the provisions of the leases "and all the actual facts in respect to each claim," and that the court, after determining the questions involved, should give such instructions to the plaintiff as law and equity and the rights of the parties might require, and direct the defendants "and each of them by a mandatory injunction to accept such dividends as may be finally determined to be justly and legally due them."

The case was heard by *Wait,* J. The material facts found by him are stated in the opinion. The plaintiff asked for the following rulings among others:

"1. The plaintiff as assignee of the Burnham Shoe Company is not a 'legal representative' of the said company within the

meaning of that term as used in the respective leases from the respondents to said Burnham Shoe Company.

"2. The defendants can maintain their respective claims against the plaintiff as assignee in this case for only so much of the same as has arisen and accrued on or before the date when the assignment of the Burnham Shoe Company to the plaintiff became effective.

"3. The assignee is under no obligation to recognize any claim of either defendant based on charges for removing or repairing the leased machinery after the cancellation of the leases by the defendants or after the assignment took effect."

The judge refused to rule as requested, ruled that as a matter of law the defendants were entitled to prove the contested items under the terms of the assignment and the leases and license agreements and to receive *pro rata* dividends on their claims as thus proved, and reported the case for determination by this court.

*A. G. Wadleigh,* for the plaintiff.

*W. B. Farr,* (*N. B. Todd* with him,) for the defendants.

CROSBY, J. This is a bill for instructions brought by the plaintiff as assignee for the benefit of the creditors of the Burnham Shoe Company. The question is whether certain claims presented by the defendants are legally provable against the estate.

No question has been raised as to the right of the plaintiff to maintain the bill, and that question is not considered or determined.

We now come to the real question at issue between the parties.

The report of the judge of the Superior Court shows that at the time the Burnham Shoe Company made the assignment to the plaintiff it was in possession of certain machinery used for the manufacture of shoes, and that such machinery was all owned by the defendant the United Shoe Machinery Company, with the exception of one machine which was owned by the United-Xpedite Finishing Company, defendant. This machinery was held and used under certain leases or license agreements entered into between the parties. These leases or agreements contain many provisions relating to the terms and conditions upon which the machinery is to be so held and used. It will not be necessary to consider all these provisions, but only

certain clauses or articles which are substantially the same in all the leases.

The defendants, as unsecured creditors of the Burnham Shoe Company, having received notice of the assignment, duly assented to its terms and presented to the assignee itemized statements of their accounts upon which they sought to recover dividends.

The items in dispute are certain "return charges" on certain machines, — charges for repairs, and freight and cartage charges on machines which were taken by the defendants after terminating the leases.

All of the leases and license agreements provide that "If the lessee becomes insolvent or bankrupt, or has a receiving order made against him, or makes or executes any bill of sale, deed of trust or assignment for the benefit of his creditors, . . . then and in each such case any or all leases of or licenses to use machinery then existing between the lessor and the lessee, . . . shall at the option of the lessor cease and determine, and the possession . . . of all machinery the leases or licenses of which are so terminated, shall thereupon revest in the lessor free from all claims or demands whatsoever."

Under and by virtue of the foregoing provisions in the leases, the lessors, soon after the notice of the assignment to the plaintiff, terminated the leases and licenses by giving proper notice thereof to the proper officers of the Burnham Shoe Company, and the plaintiff was notified of said termination, and allowed the lessors to take possession of the leased machines. The defendants entered and removed the leased property within one month from the date of the assignment.

The notices of termination contained a demand that the lessee forthwith deliver at the office of the lessors in Beverly in this Commonwealth, the machines designated in said leases and licenses and any and all other machines belonging to the lessors which theretofore had been delivered into its possession, enumerating in detail the machines, and stated: "You are hereby notified that in the exercise of our rights in the premises, we have elected and hereby declare our option to terminate all leases and licenses which have heretofore been granted to you covering machines belonging to us, including herein the following leases and licenses, to wit:"

The deed of assignment was in the form of a common law assignment. The third paragraph contained a provision to the effect that the debts provable by creditors of the shoe company were such debts as were provable against the estate of insolvent debtors under the laws of this Commonwealth. The defendants who have assented to the assignment are bound by its terms.

Under our statute, the claims which are legally provable against the estate of an insolvent debtor are, so far as material to this case, defined as follows: "Debts due and payable from the debtor at the time of the first publication of the notice of issuing the warrant may be proved and allowed against his estate at any meeting; and debts at that time absolutely due, although not payable, may be proved and allowed as if payable, with a discount or rebate of interest if no interest is payable by the contract. . . ." R. L. c. 163, § 31.

The question then is whether the disputed items in the respective accounts were provable at the time of the execution and delivery of the deed of assignment; in other words, were these items debts which were due and payable at that time, or were they debts "at that time absolutely due," although not payable?

We are of opinion that when the assignment was made these items were not debts due and payable, nor were they debts at that time absolutely due, although not payable, and that therefore such items were not provable against the assignee.

As we have seen, all the leases contain a provision that they may be terminated at the option of the lessor, if the lessee, *inter alia,* makes an assignment for the benefit of his creditors. It also appears that that option has been exercised by the lessors since the assignment was executed; but as the leases were in full force and effect at the time of the execution of the assignment nothing was then due on account of the items in question. The execution of the assignment did not terminate the leases, but authorized the lessors to end them at their option.

It is manifest that the disputed items were all contingent upon the termination of the leases, and so were in no sense absolutely due from the Burnham Shoe Company, and if the lessor had failed to exercise its option none of these items ever could become due or payable.

The return charges on the Goodyear machines are claimed under

Clause 10 in lease No. 7374, and Clause 11 in leases No. 7374A and No. 7374B. Clause 10 provides that upon the termination of the lease or any extension thereof, the lessee shall pay to the lessor $150 on each of certain machines therein described. Clause 11 provides in part that upon the termination of the lease the lessee, in addition to all other payments to be made, shall pay the lessor a certain stipulated amount in respect to each leased machine, "provided, however, that in case the lease and license hereby granted shall continue throughout the full term of seventeen years . . . and the lessee at the time of returning the leased machinery at the end of said full term, shall not be in default as to any of the payments under or other conditions, stipulations or provisions of this or any other lease or license agreement between the lessor and the lessee, then the payment in this Article hereof provided for shall not be required to be made."

Under both of the above clauses the time is uncertain as to when the lease will terminate, if at all; and under Clause 11 the payment therein referred to is also made contingent upon conditions which make it doubtful whether any sum ever will become due, even upon the expiration of the lease.

The claim for return charge on the eyeletting machines under lease No. 8205 is under a provision whose language is substantially the same as that of Clause 10 in lease No. 7374 above referred to.

The return charges on the general department machines were claimed under Clause 7 of the general department lease, No. 6217, which provides in part that upon the expiration or termination of the lease the lessee shall pay the lessor in respect to each machine leased a stipulated amount, with the further provision that if the lessee shall have at all times prior to such expiration or termination of the lease kept all of the conditions of the lease and of all other leases between the parties, and is not in default, and shall promptly and fully carry out the obligations incumbent upon the lessee upon such expiration or termination, the payments in this article to be made shall be reduced by an amount equal to one half of the annual payments theretofore made by the lessee under the provisions of article six, "or in case one half of such annual payments theretofore made by the lessee to the lessor in respect to such machine equals or exceeds the payment in this article hereof provided to be made in respect thereto then said payment

under this article hereof in respect to said machine shall be waived."

It will be observed that the amount, if anything, which ever would become due under Clause 7 of lease No. 6217, would be contingent upon the amounts previously paid by the lessee as rent before the expiration of the lease. The various clauses above referred to relate to the "return charges" under which the defendants claim.

It only remains to consider the clause of the leases which entitles the lessor to claim for repairs. This provision is substantially the same in all the leases and provides in part that the term of the agreement shall be seventeen years from the date of the lease. The leased machinery and license to use the same shall continue unless sooner terminated by the lessor, and "if, upon the expiration of the full term of this agreement, the lessor does not request the return of the leased machinery, then the leased machinery shall continue to be held and used under and in accordance with the conditions . . . in this agreement contained and this agreement and the lease and license herein contained shall thereupon be extended indefinitely as to term."

Then follows a provision that upon sixty days' notice given by either party to the other, the lease may be terminated, whereupon the leased machinery shall be delivered forthwith to the lessor at Beverly, and the lessee shall pay the lessor such sum as may be necessary to put the leased machinery in suitable order and condition to lease to another lessee.

The claims for cartage and freight were made under provisions, common to all the leases, that upon the termination thereof the lessee should return all the leased machinery to the lessor at Beverly.

The items in the account of the United-Xpedite Finishing Company are claimed under its lease to the Burnham Shoe Company, No. 2312, Clause 10, which is substantially the same as the clause last quoted, except that the contingent payments provided for are fixed as to amount in this lease.

It is plain that all of the disputed items were contingent upon the termination of the leases, and while they might be terminated in various ways, still, under the clause last above referred to, which is a provision substantially identical in all the leases, there was

no absolute certainty that either of the leases ever would terminate, but they might "be extended indefinitely as to term," if the lessor did not at the expiration of the term "request the return of the leased machinery." Thereafter either party might terminate the lease upon sixty days' notice in writing to the other.

We need not decide whether the language of the federal bankruptcy act (63 a, cl. 1 & 4 of the act), which defines the claims that are provable in bankruptcy, is identical in meaning with the language of our statute defining claims that are provable in insolvency, because we are of opinion that under the decisions of this court which have interpreted R. L. c. 163, § 31, the items in controversy were not, when the assignment was made, provable as debts either due or payable, or as debts at that time absolutely due although not payable. There might or might not be such debts in the future depending upon many contingencies that have been pointed out by reference to the different clauses of the leases in question. *Wood* v. *Partridge,* 11 Mass. 488, 492. *Bordman* v. *Osborn,* 23 Pick. 295. *Bangs* v. *Lincoln,* 10 Gray, 600. *Morton* v. *Richards,* 13 Gray, 15. *Allen* v. *Herrick,* 15 Gray, 274. *Thayer* v. *Daniels,* 100 Mass. 345. *Deane* v. *Caldwell,* 127 Mass. 242. *McDermott* v. *Hall,* 177 Mass. 224.

The claims in controversy not only are contingent, but the provisions of the leases relating thereto are of an executory character. As was said in *Allen* v. *Herrick, supra,* "The agreement is nevertheless executory in its character, to perform some act or pay money, not as a present existing debt or duty, but as a future liability or obligation to arise or grow out of the contract," and so was not provable in insolvency. See also *Roth* v. *Appel,* 181 Fed. Rep. 667; *In re Jorolemon-Oliver Co.* 213 Fed. Rep. 625.

The defendants contend that the time of the termination of the leases was important only as determining the time for payment, but in no way affected the lessee's obligation to make such payment. The difficulty with this contention is, as has been pointed out, that it was not certain that the leases ever would be terminated, or that the disputed items ever would be absolutely due or payable, and therefore it is plain that no provable debt was due when the assignment was executed. *Bowditch* v. *Raymond,* 146 Mass. 109, 114, 115. *Cotting* v. *Hooper, Lewis & Co. Inc.*

*ante,* 273.   See also *Williams* v. *United States Fidelity & Guaranty Co.* 236 U. S. 549.

Most, if not all, of the cases cited by the defendants which have been decided by this court recognize the distinction between a debt absolutely due even if not payable, and a collateral and contingent liability, and it has been uniformly held that claims of the latter character are not provable in insolvency.

The case of *Lothrop* v. *Reed,* 13 Allen, 294, cited by the defendants, cannot be considered as an authority for their contention, as it decided only that a claim for unliquidated damages, resulting from the failure to fulfil a contract to sell and deliver goods, is provable in insolvency under our statutes.   In that case there was no question but that there was a breach of contract, the only matter to be decided being the amount of the damages caused by the breach.

Because of the interpretation which we tl        ould be put upon the leases heretofore referred to, the plaintil         istructed that the disputed claims of the defendants were not p.,   able in insolvency in view of our decisions, and consequently were not provable against the plaintiff as assignee.

The case is to stand for further hearing as to·the amounts for which the defendants are entitled to have their claims allowed, respectively, in accordance with this opinion, unless the parties agree upon such amounts.

*Ordered accordingly.*