## In re DESNOYERS SHOE CO.

### SANGAMON LOAN & TRUST CO. v. UNITED SHOE MACHINERY CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

#### No. 2236.

1. BANKRUPTCY ☞318—PROVABLE CLAIMS—OBLIGATIONS ARISING BECAUSE OF BANKRUPTCY.

The claimant leased machinery by leases which provided that, if the lessee became bankrupt, the leases should at the option of the lessor cease and determine; that upon any breach by the lessee of any of the conditions therein the lessor should have the right by notice in writing to terminate the leases; that upon the termination of the leases the lessee should deliver the machinery to the lessor at B. in good order, reasonable wear and tear excepted, and should thereupon pay certain amounts as reimbursement for deterioration, etc. Some of the leases also provided for the payment of the amount necessary to repair the machines for use by another lessee. The lessee became bankrupt, and the lessor served a notice that "we have elected and hereby declare our option to terminate" the leases, and that the "leases are hereby terminated." *Held* that, as notice or re-entry was not required when the leases were terminated because of bankruptcy, the termination was coincident with the bankruptcy, and the obligation to pay the return charges, repair charges, and freight expenses was a fixed liability absolutely owing at the time of the bankruptcy, notwithstanding the uncertainty as to the existence of such obligation until the lessor manifested its election to treat the leases as broken.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec Dig. ☞318.]

2. BANKRUPTCY ☞318—PROVABLE CLAIMS—OBLIGATIONS ARISING BECAUSE OF BANKRUPTCY.

The filing of the lessor's claim evidenced its intention to treat the leases as canceled by the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. ☞318.]

3. BANKRUPTCY ☞318—PROVABLE CLAIMS—OBLIGATIONS ARISING BECAUSE OF BANKRUPTCY.

The notice of termination of the leases served by the lessor was not intended to make the cancellation effective only from the date of service,

---

but to evidence an election theretofore made, and was not inconsistent with a holding that the lessor's claim was a fixed liability absolutely owing at the time of the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. ☞318.]

4. BANKRUPTCY ☞312—CLAIMS—LOSS OF RIGHT—LEASES OF PERSONAL PROPERTY.

Actual redelivery of the machinery to the lessor at B. was not a condition precedent to the payment of the return charges, and a waiver of the obligation to ship them to B., and an acceptance of them at the lessee's factory, followed by a letting of them to a third party, did not release the claim for such charges.

[Ed. Note—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. ☞312.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois; Arthur L. Sanborn, Judge.

In the matter of the Desnoyers Shoe Company, bankrupt. From an order allowing the claim of the United Shoe Machinery Company, the Sangamon Loan & Trust Company, trustee in bankruptcy, appeals. Affirmed.

See, also, 227 Fed. 16, —— C. C. A. ——.

The bankrupt leased shoe machinery from the claimant under numerous leases dated on and after 1904. They contained, among others, the following provisions:

"(1) The leased machinery shall at all times remain and be the sole and exclusive property of the lessor and the lessee shall have no right of property therein, but only the right to use the same upon the conditions herein contained. * * * If the lessee becomes insolvent or bankrupt, or has a receiving order made against him, * * * then and in each such case any or all leases of or licenses to use machinery then existing between the lessor and the lessee * * * shall at the option of the lessor cease and determine, and the possession of and full right and control of all machinery the leases or licenses of which are so terminated, shall thereupon revest in the lessor free from all claims and demands whatsoever."

"(10) The term of this agreement shall be 17 years from the date hereof. The lease of and license to use the leased machinery and the clicking machine dies of the lessor shall continue, unless sooner terminated by the lessor because of breach on the part of the lessee, or otherwise as in this agreement, provided, for the full term of this agreement. But if any breach or default shall be made in the observance of any one or more of the conditions herein contained * * * obligatory upon the lessee, the lessor shall have the right, by notice in writing to the lessee, to terminate forthwith any or all leases of or licenses to use machinery then in force between the lessor and the lessee. * * * If upon the expiration of the full term of this agreement, the lessor does not request the return of the leased machinery, then the leased machinery and dies shall continue to be held and used under and in accordance with the conditions, stipulations, and provisions in this agreement contained, and this agreement and the lease and license herein contained shall thereupon be extended indefinitely as to term; but thereafter either the lessee or the lessor, upon 60 days' notice in writing to the other, may terminate this agreement and the lease and license herein contained, whereupon the leased machinery shall be delivered forthwith to the lessor, as herein provided.

"(11) Upon the expiration of this agreement or any extension thereof or the termination of the lease and license herein contained, the lessee shall forth-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

with deliver the leased machinery to the lessor at Beverly, Mass., in good order, reasonable wear and tear alone excepted."

In some of the leases, designated as "Form 1," paragraph 11 continues as follows:

"And shall thereupon pay to the lessor without prejudice to any other rights or remedies of the lessor the sum of one hundred dollars ($100) in respect to each machine hereby leased as partial reimbursement to the lessor for deterioration of the leased machinery, expenses in connection with the installation thereof and instruction of operators."

Form 2 has the following return charge clause:

"(7) Independently of and in addition to all other payments herein provided for the lessee upon the expiration or termination of the lease hereby granted or any extension thereof shall pay to the lessor in respect to each machine hereby leased the amount set opposite the name of such machine in column numbered 'III' in the 'Schedule of Machines' hereinbefore contained: Provided, however, that in case at all times prior to such expiration or termination the lessee shall have faithfully kept, observed and performed all of the conditions, terms, agreements, stipulations, and provisions of this lease and license agreement, and of all other leases and licenses and agreements between the lessor and the lessee, and is not in default in respect to any payment or otherwise hereunder or thereunder, and shall promptly and fully carry out all obligations incumbent upon the lessee upon such expiration or termination, the payment in this article hereof provided to be made in respect to each such machine shall be reduced by an amount equal to one-half of the annual payments theretofore made by the lessee to the lessor in respect to such machine under the provisions of article 6 hereof; or in case one-half of such annual payments theretofore made by the lessee to the lessor in respect to such machine equals or exceeds the payment in this article hereof provided to be made in respect thereto then said payment under this article hereof in respect to said machine shall be waived."

The return charge clause in Form 3 reads as follows:

"Upon the expiration or termination of this agreement or any extension thereof, or of the lease and license hereby granted, the lessee, in addition to all other payments in this agreement provided for and without prejudice to any other rights or remedies of the lessor, shall pay to the lessor as partial reimbursement to the lessor for deterioration of the leased machinery, expenses in connection with the installation thereof and instruction of operators, an amount in respect to each machine hereby leased equal to two-thirds of the sum set opposite the name of such machine in the column numbered 'I' in the Schedule of Machines hereinbefore contained: Provided, however, that in case the lease and license hereby granted shall continue throughout the full term of 17 years hereinbefore provided for as the full term of this agreement and the lessee at the time of returning the leased machinery at the end of said full term shall not be in default as to any of the payments under or other conditions, stipulations, or provisions of this or any other lease or license agreement between the lessor and the lessee, then the payment in this article hereof provided for shall not be required to be made."

This form has in addition a repair charge clause as follows:

"Upon the expiration or termination of this agreement or any extension thereof or of the lease and license herein contained, the lessee shall forthwith deliver the leased machinery to the lessor at Beverly, Mass., in good order, reasonable wear and tear alone excepted, and shall thereupon pay to the lessor without prejudice to any of the rights or remedies of the lessor such sum as may be necessary to put the leased machinery in suitable order and condition to lease to another lessee."

The petition in bankruptcy was filed July 21, 1911; on July 26, 1911, a notice in reference to the termination of the leases was served on the bankrupt's receiver. The claim for the so-called "return charges" and for freight and repair expenses, rejected by the referee as conditional and therefore not provable in bankruptcy, was allowed by the District Court in the sum of over $20,000.

O. S. Humphrey and P. B. Warren, both of Springfield, Ill., for appellant.

Douglas W. Robert, of St. Louis, Mo., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1] It has been held in numerous cases that bankruptcy does not create an anticipatory breach of a lessee's obligation to pay rent for realty, that the leasehold estate is not thereby terminated, and that if the lease expressly provides for forfeiture or cancellation because of the bankruptcy, but conditions the cancellation on notice and re-entry, a claim arising only after and in the event of such cancellation is not provable in the bankruptcy proceedings because it is conditional at the time the petition is filed. In re Ells (C. C.) 98 Fed. 967; Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719; In re Roth Appell, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Slocum v. Soliday, 183 Fed. 410, 106 C. C. A. 56; Colman v. Withoft, 195 Fed. 250, 115 C. C. A. 222; Cotting v. Hooper, Lewis & Co., 220 Mass. 273, 107 N. E. 931.

Assuming, without deciding, that this is equally true of a leasehold of chattels, it would follow that bankruptcy of the lessee would not end the lease, and that if the reserved right to cancel it on bankruptcy were conditioned on notice to the lessee, a claim for moneys to become due at the termination of what is in form a 17-year, but in substance a perpetual, though terminable, lease, could not be allowed as a fixed liability absolutely owing at the time of the bankruptcy. Shaw v. United Shoe Machinery Co., 220 Mass. 486, 108 N. E. 68. And in Re Jorolemon-Oliver Co., 213 Fed. 625, 130 C. C. A. 217 (C. C. A. 2d Circuit), the court rejected a claim similar to the one now in question because it interpreted the lease as providing for termination only if and when notice should be served. Contra, In re D. C. Clark Shoe Co., 211 Fed. 341 (D. C. Mass.).

It is to be noted, however, that the subject of the cancellation of these leases is dealt with in two separate paragraphs; in both the termination is at the lessor's option; if the right arises because of a breach or default by the lessee, notice in the form prescribed is made essential by the express provisions of the lease; but if because of insolvency or bankruptcy, no formal notice or re-entry is required.

If, then, these leases were ended; not because of the lessee's default or breach, anticipatory or otherwise, but because of its bankruptcy, the termination was coincident with the bankruptcy itself. Inasmuch as the lessor had an option to maintain the leases in full force notwithstanding the bankruptcy, it was uncertain, until the lessor in some way manifested its election, whether or not the leases had terminated and the obligations conditioned thereon had become fixed and absolute. This uncertainty, however, was as to the existence, not as to the nature, of the liability. If, by reason of the election, the bankruptcy did end the lease, then the obligations were absolute as of the time that the petition in bankruptcy was filed.

The situation is exactly analogous to that arising on the repudiation of a contractual obligation. The obligee may accept or reject it as creating an anticipatory breach; until he manifests his election, it is uncertain whether or not the contract has been broken; if, however, he does elect to treat the repudiation as an anticipatory breach, it is not his election but the repudiation, express or constructive, that creates the breach and the liability to respond therefor in damages. In those cases in which bankruptcy is held to be a constructive repudiation, and thus to enable the obligee to elect to regard it as an anticipatory breach of contract, he may file his claim for damages in the bankruptcy proceedings because the breach is occasioned by, and thus the claim arises coincident with, and not after, the bankruptcy, and is unconditional at that time; and this, too, notwithstanding the uncertainty, until the election is manifested, whether or not any breach has been in fact committed, and therefore whether or not any claim or liability therefor in fact exists. In re Scott Transfer Co., 216 Fed. 308, 132 C. C. A. 452; contra, In re Montague & Gillet, Inc., 212 Fed. 452, 32 Am. Bankr. Rep. 106 (D. C. S. D. New York). Because the obligee is not bound to consider repudiation before maturity as a breach, but may continue to treat the contract as in full force, the obligor's discharge in bankruptcy has been held to be no defense to an action for the later actual breach of a conditional obligation at its maturity. Phenix National Bank v. Waterbury, 197 N. Y. 161, 90 N. E. 435.

[2] As the uncertainty in regard to the existence of a liability is due solely to the inability or failure of the obligee to manifest his election at the instant of bankruptcy or other breach, and as his right of action arises at once at the moment of the anticipatory breach, his subsequent election by suing or filing a claim is properly given retroactive effect in the absence of any act inconsistent therewith. And similarly in this case: By its express provisions, bankruptcy terminated the lease at the lessor's option; the filing of the claim evidenced the lessor's election to treat the lease as canceled by the bankruptcy; the obligations contingent on termination thus became fixed, absolute, and certain, coincident with the filing of the bankruptcy petition.

[3] While no notice was required, the one actually served on the bankrupt's receiver a few days after the petition in bankruptcy was filed is not inconsistent with this position; though it states that the "leases are hereby terminated," it begins with a notification that "we *have* elected and hereby *declare* our option to terminate" all leases; in our judgment, it was intended, not to make the cancellation effective only from the date of service, but to evidence an election theretofore made, and to notify the parties that the lessor's rights resulting therefrom would be enforced.

[4] The so-called return charges, as well as freight and repair expenses, became absolutely due and payable on the termination of the leases; that is, at bankruptcy. Actual redelivery at Beverly was not a condition precedent to the payment of the fixed sum of $100 per machine, specified in "Form 1." A waiver of the obligation to ship some of them to Beverly, and the acceptance at the bankrupt's factory

and subsequent letting to a third party, cannot be deemed a release of the claim for this $100 per machine.

The judgment of the District Court allowing the claim in full for the return charges and the actual freight and repair expenses, stipulated to be a reasonable charge therefor, on the machines returned to Beverly, must be affirmed.

⬤═⫸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes