In re WISCONSIN ENGINE CO.

GAS POWER MACHINERY CO. v. WISCONSIN TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1916.)

No. 2312.

1. BANKRUPTCY ☞150—PROPERTY OF BANKRUPT—PATENT LICENSE—DUTY OF TRUSTEES TO ACCEPT.

A trustee in bankruptcy is under no obligation to accept a patent license burdened with executory obligation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 228; Dec. Dig. ☞150.]

2. BANKRUPTCY ☞322—CLAIMS—LICENSE—PROMISSORY NOTE IN PAYMENT OF ROYALTIES.

Negotiable promissory notes given by a patent licensee in payment for the license on a royalty basis held payable in any event and properly allowed by the trustees in bankruptcy of such licensee at their discount value as of the date bankruptcy proceedings were begun, and not the pro rata amount of earned royalties apportionable to the date of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 508–510; Dec. Dig. ☞322.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **BANKRUPTCY ⬢⇒316(1)—CLAIMS—NEGOTIABLE NOTES IN PAYMENT OF CON-DITIONAL OBLIGATION.**

The mere giving of notes, to evidence or in prepayment of clearly conditioned obligations, will not annul the conditions, or make an otherwise unprovable claim allowable in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 477; Dec. Dig. ⬢⇒316(1).]

4. **BANKRUPTCY ⬢⇒322—CLAIMS—ALLOWANCE—NEGOTIABLE NOTES.**

A contract provision that notes should be given in payment for patent license on royalty basis, and should be negotiable, is evidence tending to show that the amount of such notes should be payable in any event and should be allowable by the trustee in bankruptcy of the licensee at their face value, regardless of whether the notes had been negotiated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 508–510; Dec. Dig. ⬢⇒322.]

, Alschuler, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of the Wisconsin Engine Company, bankrupt. From a judgment of the District Court, reversing the order of the Wisconsin Trust Company, trustee in bankruptcy, allowing the claim of the Gas Power Machinery Company, the latter appeals. Reversed and remanded, with directions.

Howard M. Harpel, of Chicago, Ill., for appellant.

Joseph H. Marshutz, of Milwaukee, Wis., for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

MACK, Circuit Judge. A claim on three negotiable promissory notes, all dated January 1, 1912, one for $2,500, which matured January 1, 1913, and two for $5,000 and $3,750, respectively, maturing January 1, 1914, and January 1, 1915, all payable to appellant, was allowed by the referee for $10,537.51, their discounted value as of January 21, 1913, the date bankruptcy proceedings were begun, over objections going to the validity both of the entire claim and of so much thereof as was not earned before bankruptcy. This order was reversed by the District Court, and the claim allowed for the pro rata amount held apportionable from January 1, 1912, to January 21, 1913. The claimant appeals.

On January 1, 1912, appellant, owner of certain letters patent and rights to inventions, entered into a license agreement with the bankrupt. After reciting this ownership, licensor's desire to have licensee undertake the exploitation thereof, licensee's desire to secure the exclusive rights therein, it contained, inter alia, the following provisions:

(1) An exclusive perpetual license to manufacture, use, and sell was granted subject to the further provisions of the agreement.

(2) Licensee agreed, so long as it enjoyed a practical monopoly in the machines and processes for producing gas in the manner specified in detail, to pay to the licensor a royalty of 50 cents per horse power capacity of each machine manufactured and sold under the agreement, "it being understood and agreed in this behalf that in any event the licensee shall pay to the licensor during the first year from the date hereof royalties to the total mini-

mum amount of at least five thousand dollars ($5,000), and during the first two years from the date hereof royalties to the total minimum amount of at least fifteen thousand dollars ($15,000), and during the first three years from the date hereof royalties to the total minimum amount of at least twenty-two thousand five hundred dollars ($22,500); and as evidence or prepayment of such sum the licensee will deliver to the licensor, at the time of the signing of this agreement, two sets of negotiable promissory notes of equal amounts for the aggregate sums of twenty-two thousand five hundred dollars ($22,500.00), made and executed respectively by the licensee and Edward A. Rumley, of La Porte, Ind., said notes to bear like date herewith draw interest at the rate of 6 per cent. per annum, after maturity, and be payable at the following times and in the following amounts: Five thousand dollars ($5,000) shall be payable at the end of one year from the date hereof; ten thousand dollars ($10,000) at the end of two years from the date hereof; and seven thousand five hundred dollars ($7,500) at the end of three years from the date hereof. But if during substantially all of said third year from the date hereof the licensee enjoys or shall enjoy such substantial or practical monopoly of such exclusive right, then and in that event said royalties shall aggregate for said three years the sum of at least thirty thousand dollars ($30,000), and if at the end of said three years from the date hereof the licensor shall not have received royalties aggregating this amount, then and in such event the licensee will pay to the licensor an additional sum sufficient to make up such aggregate amount." It further provided for $100,000 for the first six years under like conditions, with the right, however, by payment of $200,000 in all during the first four years, to have the entire interest of the licensor free from any further royalties.

(7) Licensee agreed to push the business, to prosecute infringements, to advance the necessary money, "and to this end the licensee shall open an account on its books with the licensor, into which shall be charged against the licensor one-half of such sum of money as shall be so advanced and paid out by the licensee, and the same shall be repaid by the licensor from the sums which shall become due and payable to the licensor as royalties and to this end the licensee may retain 50 per cent. of such royalties until such advances are repaid: Provided that the share of such sum or sums payable by the licensor, and chargeable against it as aforesaid, shall in no event exceed one-half of said royalties, and in no event shall any portion of said $22,500 be applied toward payment of costs, but the same shall be payable to the licensor in any event in full, and no part thereof shall be retained by the licensee for any purpose after the same shall become due as aforesaid." Neglect by either party for 60 days after notice by the other to comply with any provision enabled such other at its option to terminate the agreement.

(9) Licensee might terminate the agreement if permanently enjoined, and if no longer able to enjoy the practical monopoly provided for, but it should remain liable for all royalties up to that time accrued.

(10) In the event of licensee's insolvency, licensor shall have the right to cancel the agreement; the contract shall not be assigned except to M. Rumely & Co.

The claim filed against the bankrupt estate is on the three notes executed by the bankrupt pursuant to section 2 of the license agreement.

[1] It is undisputed that a trustee in bankruptcy is under no obligation to accept a patent license burdened with executory obligations. It is, in this respect, like other property rights belonging to the bankrupt, whether resulting from a grant or conveyance coupled with executory obligations, like a lease of real or personal property, or from a purely executory agreement. Whether such a license is to be dealt with like the exclusive transportation privileges considered in Re Frank E. Scott Transfer Co., 216 Fed. 308, 132 C. C. A. 452, affirmed on this point in the Supreme Court April 3, 1916, in which bankruptcy was held to create an anticipatory breach, giving rise to a provable

claim for such damages as could be deemed certain, or whether the relation thereby created is like that of landlord or tenant, in which the tenant's bankruptcy has been held not to amount to an anticipatory breach (see cases cited in Re Desnoyers Shoe Co., 227 Fed. 401, 142 C. C. A. 97), we need not here determine, for the claim filed is neither for damages caused by such a breach nor for future royalties to be paid like rent solely for the continued use of the property granted.

[2] In our judgment, the indebtedness represented by the notes was the consideration for the grant of the exclusive license. It was expressed in terms of royalties, and properly so, because, in so far as royalties up to that amount would be earned under the agreement, payment of the notes would cancel any obligation in respect thereto. But it was not expressed as conditioned upon such royalties being earned. The parties contemplated the possible cancellation of the license before the expiration of three years because of licensee's breach of the agreement or its insolvency. Nevertheless the obligation to pay the $22,000 remained. It was to be paid in full "in any event," to quote the language of both the second and the seventh clauses of the agreement. Compare it with the provision for a $30,000 minimum for the first three years; both are described as royalties. The $30,000 is to become due, however, only if the licensee actually enjoys the very thing he contracted for, a practical monopoly. The $22,500 obligation, represented by the two sets of notes, is unconditioned.

[3, 4] There is no guaranty that, if royalties shall in fact become due, they shall amount to at least $22,500 for the period; there is an absolute undertaking that this amount shall be paid. While the mere giving of notes to evidence or in prepayment of a clearly conditional obligation would not annul the condition or make an otherwise unprovable claim allowable in bankruptcy (Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118), the provision that notes should be given and that they should be negotiable is additional evidence tending to resolve any doubt as to the intention of the parties that the amount therein stated was to be payable in any event. That the notes were not in fact sold is of no moment. The parties necessarily contemplated that they might be negotiated.

The order disallowing a portion of the claim must be reversed, and the cause remanded, with directions to allow the claim in the sum of $10,537.51.

ALSCHULER, Circuit Judge (dissenting). I cannot concur in the conclusion that the notes here in question represent consideration to the licensor for granting the exclusive license. The contract nowhere so states, but specifies "a royalty of 50 cents per horse power," etc., and provides for the guaranty of the annual minimum of "royalties" of the stated sums, and for the giving of the notes "as evidence or prepayment of such sum." The notes bear no interest till after their maturity at the respective times for payment of the minimum royalties, and so, if a present consideration, the payee's beneficial use of it is postponed till the minimum royalties would become payable. While the contract mentions these minimum sums as being payable "in any

event," these words, in my judgment, are but a different form for stating that for each of those years the royalties shall not be less than the sums named; and, besides, elsewhere in the instrument are found conditions under which the payments might never accrue. Section 8 provides for cancellation of the contract by either party in case the other does not comply with its terms; section 9 for cancellation by licensee in case it is enjoined and cannot have practical monopoly of the rights granted, but in this case "it shall be liable for all royalties up to that time accrued," and shall have no further use of the patents. And so, if for any such reason the contract is terminated further royalties thereunder cannot accrue, any more than can rent accrue after the termination of the tenancy. In re Roth & Appel, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Atkins v. Wilcox, 105 Fed. 595, 44 C. C. A. 626, 53 L. R. A. 118. These conditions seem to me quite inconsistent with the inference that the notes represent anything but royalties, as specified. The claim is on the notes, and I believe the District Court was right in rejecting so much thereof as did not represent the minimum royalties accrued at time of bankruptcy. On the authority of the recent opinion of the Supreme Court in Re Frank E. Scott Transfer Co., 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811 (April 3, 1916), it would seem that a claim based on an anticipatory breach of the contract through the bankruptcy would have been provable to the extent of the resultant damages shown.