equally, if the fund is not enough to pay all. But the first creditor adds: "The indorsement of my debt exhausted the amount which the sureties were bound to secure. Your debt originated after mine, and was indorsed in excess of the amount the sureties undertook to indorse." This raises an objection to the participation of the petitioner which is not without weight, and has given us serious consideration. We have, however, concluded that every debt indorsed by one or more of the mortgagees, within the time limit of the mortgage, is entitled to share equally in the distribution of the indemnity provided by the mortgage. The mortgagor did not intend to secure any particular indorsements. It is as if it had said: "I want you to indorse for me, and to continue my indorser from time to time for the next four years up to as much as $25,000. Here is property worth $25,000, which I will place in your hands to indemnify you against loss as my surety." Under this arrangement the surety becomes bound on paper in excess of $25,000. When the creditors holding such paper come to secure the appropriation of the collateral deposited by the debtor with the surety, justice is best attained by equality of right. The limitation placed upon the amount of liability which the mortgagees agreed to assume was not for the benefit of the creditor. Neither was the mortgage itself intended for his benefit. The right of subrogation arises not out of contract, but is a pure equity, and allowed only where it does not conflict with the legal or equitable rights of other creditors of the common debtor. Greenlaw v. Pettit, 87 Tenn. 480, 11 S. W. 357; Pom. Eq. Jur. (1st Ed.) § 1419, note 1. Any creditor coming with a debt made within four years after the date of the mortgage, and secured by one or more of the mortgagees, is within the restrictions of the mortgage and within its equity.

We therefore conclude that the district court erred in the order made, and that the petitioner is entitled to share ratably with the Third National Bank in the benefits of the mortgage. The order will be set aside, and an order of distribution made in conformity with the view here expressed. The Third National Bank will pay the costs of this proceeding.

---

In re ARNSTEIN et al.

(District Court, S. D. New York. October 6, 1899.)

1. BANKRUPTCY—PROVABLE CLAIMS—RENT.

Where a tenant of realty, under a lease for a term of years, becomes bankrupt, the landlord is entitled to prove a claim against his estate only for rent due at the time of the filing of the petition in bankruptcy, not for rent which would have accrued during the remainder of the term. Such unaccrued rent is not a fixed liability absolutely owing at the time of the bankruptcy, but only an unmatured obligation to pay in the future a consideration for the future enjoyment and occupancy of the premises.

2. SAME—UNLIQUIDATED CLAIM FOR LOSS OF RENT.

Where a tenant, under a lease forbidding assignment without the landlord's consent, made a general assignment for the benefit of his creditors, and afterwards became bankrupt, and the landlord assumed control of the

property, and leased it to the trustee in bankruptcy, receiving compensation out of the estate for the time it was occupied by the latter, and then resumed possession, and moved for the liquidation of his claim against the bankrupt for damages for breach of the contract of lease, in order that it might be thereafter proved against the estate, *held*, that such claim was not provable in bankruptcy, and the motion should be denied.

3. SAME—COST OF RESTORING ALTERATIONS.

A lease of realty provided that the tenant might make alterations in the premises, he agreeing to restore the property, at the expiration of the lease, to its former condition. Before the end of the term the tenant became bankrupt, and the landlord resumed possession of the premises, and leased them to the trustee in bankruptcy, afterwards seeking to prove a claim against the estate in bankruptcy for the estimated cost of restoring the property. *Held*, that the claim was not provable, as the clause in the lease contemplated the expiration of the lease by its own terms, not by re-entry by the landlord.

In Bankruptcy. On review of decision of referee in bankruptcy. The report of the referee was as follows:

The proofs of claims objected to are for unaccrued rent under leases having yet by their terms several years to run, and the estimated cost of changing certain alterations made by the tenants, to restore the premises to the condition they were in at the time of the leases, the leases having provided that the tenants might make said alterations, they agreeing at the expiration of the lease to restore the premises to their former condition. The claimants filed also petitions asking to have their claims liquidated in such manner as the court might direct, under subdivision b, § 63, Bankr. Act. Section 63 of the bankruptcy act provides as to what are provable claims substantially as follows: (a) Debts of the bankrupt, which are (1) a fixed liability, as evidenced by a judgment or instrument in writing, absolutely owing at the time of the filing of the petition, whether then payable or not; * * * (4) founded upon an open account, or upon a contract, express or implied. (b) Unliquidated claims against the bankrupt may be liquidated in such manner as the court shall direct, and may thereafter be proved and allowed against the estate. Classes of three claims are above provided for: (1) Debts which are a fixed liability, and evidenced by instrument in writing, absolutely owing, but not necessarily then payable: (2) debts founded on contract, express or implied; (3) unliquidated claims after they are liquidated.

Section 1 of the bankruptcy act, defining the meaning of the words used, provides that "debt" shall include any debt, demand, or claim provable in bankruptcy. This definition does not assist much in determining what are debts, within the above provision. The question presented on this hearing is as to whether the above claimants have any debt or claim provable in bankruptcy, under the above provisions of the act.

A contract of lease is peculiar in its nature, and differs in many respects from other contracts. Rent, as such, is an incident to, and grows out of, the use and occupancy, and is the consideration therefor. Unaccrued rent cannot be said, therefore, to be a fixed liability then absolutely owing, payable in the future, or, indeed, a "debt" of any kind, as that word seems to be used in the act. It is only an unmatured obligation to pay in the future a consideration for future enjoyment and occupancy. This cannot be said to be, properly speaking, a present debt, demand, or claim at all, as these words are apparently used in the foregoing provisions, due regard being had to the context, and cannot come within either the clause as to fixed liability then owing or a debt founded on contract. The authorities, both under the earlier act in 1841, the last act, and the present one, seem unanimous to this effect. Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725; In re Breck, 12 N. B. R. 215, Fed. Cas. No. 1,822; Bailey v. Loeb, 11 N. B. R. 271, Fed. Cas. No. 739: In re May, 9 N. B. R. 419, Fed. Cas. No. 9,325. The above are under the late act. In re Jefferson, 1 Nat. Bankr. N. 288, 93 Fed. 948, is under the present act. Bosler v. Kuhn, 8 Watts & S. 183, is under the act of 1841. It is equally clear, I think, that

the claim for the estimated cost of restoring the premises does not come under either of said clauses.

It is urged, however, that the claimants have a claim for unliquidated damages, and they have filed an application under subdivision "b" that the same be liquidated in order that it may be proved. The bankrupts in this case, prior to the proceedings in bankruptcy, became insolvent, and made an assignment for the benefit of creditors of all their property, including presumably the lease in question, and delivered possession to the assignee. By the provisions of the lease, an assignment was expressly prohibited, except with the consent of the landlord. The bankrupts, therefore, violated the lease, and have practically put it out of their power to comply with its terms. On the breach of the whole of a continuing contract, whereby the contract is repudiated or disavowed and abandoned, the other contracting party is entitled to treat it as at an end and destroyed by such act, and seek his remedy in an action for damages for the loss of the contract. Amos v. Oakley, 131 Mass. 413; Marybury v. Land Co., 10 C. C. A. 393, 62 Fed. 335, 351; Sedg. Meas. Dam. § 90; Tod v. Land Co. (C. C.) 57 Fed. 47, 63.

It is urged that the claimants are entitled, on the above principle, to consider the contract and lease disavowed and destroyed, and assert a claim for damages for the value of their contracts; that such a claim is unliquidated, but when liquidated can be proven as a claim against the estate. It seems manifest that such a claim is capable in law of being liquidated, and the measure of damages would be the difference between the fair rental value of the premises and the amounts reserved and provided for in the lease.

One, at least, of the claimants has alleged, in his proof filed against the trustee asking for the payment of rent during the time the premises were occupied by the trustee, that the rent reserved was the fair value for the use and occupancy of the premises. On this statement there would seem to be no claim for damages, as the landlord has possession of the premises, although probably the question as to the amount of the damages is not properly involved in this hearing. Whether a claim of the nature above suggested is provable in bankruptcy was discussed, but not necessarily decided, in Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725,—a case under the old act. In Re Jefferson, above mentioned, a case under the new act, the learned justice evidently considered that such a claim could not be proven, but his opinion on that point is unfortunately very meager. In the case of People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129, it was held a claim of similar nature was provable against the receiver of a defunct corporation. See page 598, 151 N. Y., and page 1130, 45 N. E. It is true there had been there a subsequent reletting at a lower rent, and the claim was for the deficiency on an actual reletting, while here it would be for the difference between the rent reserved and the fair value of the premises; but this is not a difference in principle, but only goes to the method of ascertaining the damages. In re Hevenor, 144 N. Y. 271, 39 N. E. 393, involved the question as to provable claims under an assignment for the benefit of creditors, and it was held that the claim in that case was not provable; but there the claim was not for damages for the loss of contract, but under a provision in the lease allowing the landlord to relet as agent for the tenant, who agreed to pay the difference as it should accrue. In such case it was held there was no present debt, but only an obligation to mature in the future, not within the terms of the assignment. There the claim was based on the contract and covenant to pay the deficiency thereafter occurring, if any, and not a present claim for damages for loss of the contract. The distinction is, in substance, pointed out in the St. Nicholas Bank Case, 151 N. Y. 596–598, 45 N. E. 1129.

In many of the decisions under the old act (see cases ante) it is stated that the bankruptcy itself abrogated the lease. The old act, however, differed on this point from the present one in a very important particular, in that it contained a specific clause in regard to claims for rent, omitted from the present act, providing that the rent up to the adjudication, whether due or not, might be proved, and nothing more (see section 19); thus specifically forbidding any further claim by reason of the lease. Congress undoubtedly had the power to provide that bankruptcy should dissolve a contract of lease, and it apparently,

by the above provision of the old act, intended to do so after giving the landlord the right to prove the amount accrued, up to the time of the adjudication, which he could not otherwise have had. That clause was omitted from the present act. I do not think, therefore, the decisions under the old act have much bearing on the present question.

Whatever, however, may be the true rule as to claims of the nature above alluded to, I think it unnecessary to decide in this case, as the landlords have re-entered and resumed possession of the property. It appears by the proofs of claims filed herein against the trustee and allowed that the landlords assumed control of the property, and made substantially a new lease to the trustee, under which the landlords claim, and have been paid rent as part of the expenses of administering the estate.

The claim of Emily Smith and Frederick Henry Smith against the trustee states that the possession of the trustee was had under an agreement made by him with the landlords; that, during the time of his continuing in possession of the said premises, he should pay as rent therefor a per diem at the rate mentioned in the said lease; and that, by reason of the premises, there is justly due and owing from the said trustee, etc. The proof of claim further states substantially that on the 21st day of April, 1899, the said trustee surrendered possession of the premises to the said landlords. The claim of Ann Reilly states that the said trustee rented from the said landlords the premises in question from January 1, 1899, to April 18, 1899, at so much per diem, that being the proportionate daily rental of the premises paid by said bankrupts prior to January 1, 1899, which sum is the reasonable value of the use and occupation of the said building and premises. The landlords virtually assumed, as owners, control of their property, and are now in possession of the same. Such acts constituted an entry which terminated the tenant's term, and it is well settled that, where a landlord re-enters for forfeiture of the lease, he elects to treat the tenant as a trespasser, and cannot sue for rent afterwards accruing or for breach of covenant subsequently to be performed. By such entry the landlord put an end, by operation of the law, to the tenant's term and all claims for the future. Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725.

It is urged on behalf of the claimants that it was the duty of the landlords to lease the premises, and secure thereby as much rent as possible in mitigation of damages, under the well-known rule that a person must do what he can to keep down damages. But in this case the landlord made no pretense of acting on behalf of the tenant to mitigate damages. He made the new contract in his own name with the trustee, and, having entered and exercised his right as owner, he cannot now claim that his entry was to prevent waste or mitigate damages. Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725. He might have rented for more, and would have had the benefit; by entry he assumed the risk.

A landlord reletting premises to another is presumptively deemed, unless rebutted, to have accepted surrender. Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576. In People v. St. Nicholas Bank, 151 N. Y. 596, 45 N. E. 1129, the landlord relet under a provision in the lease giving him the right so to do. He did not enter as of his previous estate. If the reletting here was not to enforce forfeiture, but save damages for tenant's benefit, the landlord should have acted avowedly at the time in that capacity. Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576.

This disposes of all claim, including that for restoration of alterations. The lease allowed the alterations to be made, and provided only that on the expiration of the lease the premises should be restored. I think this, under the cases, meant expiration by the lease, not entry by landlord. There was no obligation to restore until the termination of the lease, and there was therefore no breach and no cause of action. This case differs widely from the case of Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725, where the damages claimed were for originally making the alterations, and there was a breach and consequent cause of action at the commencement of the lease, and prior to the re-entry, while here the making of the changes was legal. The claim, if any, is for failure to restore, and this was not to be done until the expiration of the term fixed by the lease. I think, therefore, that the claimants have no claim prov-

able in bankruptcy, in any aspect of the case, and that the proofs of claim as filed should be disallowed, and the application to liquidate should be denied.

                                                         "F. K. Pendleton, Referee."

Blumensteil & Hirsch, for trustee.

H. R. Pool, for claimants Emily Smith et al.

Mitchel Levy, for claimant Ann Reilly.

BROWN, District Judge. The ruling of the referee, excluding the claims of Emily Smith and Ann Reilly except for rent accrued up to the time of the filing of the petition, is hereby affirmed.

---

STONE, Collector, v. LAWDER et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 329.

CUSTOMS DUTIES—APPRAISAL—ALLOWANCE FOR DAMAGE.

　　Under Customs Administrative Act 1890, § 23, providing that "no allowance for damage to goods, wares and merchandise imported into the United States shall hereafter be made in the estimation and liquidation of duties thereon," but that the importer may abandon to the United States all or any portion of the goods included in any invoice, not less than 10 per cent. of the total value or quantity of the invoice, and be relieved from the payment of duties on the portion so abandoned, an importation of pineapples in bulk included in a single invoice must be considered as a whole, and the importer is entitled to no allowance on account of damage to or deterioration of the same, but must pay duty on the entire invoice, unless a portion equal to 10 per cent. thereof is abandoned.

Appeal from the Circuit Court of the United States for the District of Maryland.

John C. Rose, U. S. Atty., for appellant.

Robert H. Smith and John E. Semmes, for appellees.

Before GOFF and SIMONTON, Circuit Judges.

GOFF, Circuit Judge. S. M. Lawder & Sons, fruit importers, during the year 1897 imported a number of cargoes of pineapples in bulk from Governor's Harbor, B. W. I., to the port of Baltimore. On the discharge of the cargoes it was found that a number of the pineapples were decayed, and that they had gone into what the customs officers called "slush," having thereby entirely lost their commercial value. The collector assessed duty on the entire amount of the pineapples, no matter as to the condition they were in when they were brought into the port. The importers protested, claiming that they were not liable for the duty on the pineapples that had gone into slush before the cargo was landed. The board of general appraisers reversed the action of the collector, and held that the importers were not required to pay duty on such decayed and worthless pineapples. The collector then appealed from such decision of the board of general appraisers to the United States circuit court for the district of Maryland, which af-