## R. C. TAYLOR TRUST v. KOTHE.

Circuit Court of Appeals, First Circuit.
January 8, 1929.

No. 2273.

George S. Taft, of Worcester, Mass., for appellant.

Frank H. Pardee, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from an order of the District Court of the United States for Massachusetts.

The R. C. Taylor Trust leased, April 20, 1927, to Herbert I. Turkel certain real estate for a term of two years, to begin May 15, 1927. The rent reserved was $4,000 per year payable in equal monthly payments in advance. The lease contained the following provision:

"The filing of any petition in bankruptcy * * * by or against the Lessee shall be deemed to constitute a breach of this lease, and thereupon, ipso facto and without entry or other action by the Lessor, this lease shall become and be terminated; and, notwithstanding any other provisions of this lease the Lessor shall forthwith upon such termination be entitled to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term hereof."

Turkel afterwards was adjudged a bankrupt, but just when the petition was filed upon which adjudication was made does not appear in the record.

The lessor later filed a proof of claim for damages amounting to $5,000, which was the rent reserved in the lease for the residue of the term thereof—1¼ years.

The referee disallowed the claim, and upon petition for review the District Court sustained the referee and dismissed the petition.

It is well-settled law in this circuit that a claim for rent accruing after the filing of a petition in bankruptcy is not a provable claim. The quoted provision in the lease was clearly inserted for the purpose of enabling the lessor in the event of bankruptcy to protect itself to some extent against the

Anderson, Circuit Judge, dissenting.

loss of rent for the term of the lease remaining after the filing of a petition in bankruptcy. Under it the filing of a petition in bankruptcy, either by or against the lessee, was made to constitute a breach of the lease which at once was terminated. No rent could accrue after its termination. For the breach of the lease the lessor was entitled to damages. These damages are fixed as the amount of the rent reserved under the lease. The claim presented by the lessor is therefore not for rent, but for damages to which he is entitled under this provision of the lease. The rent reserved for the balance of the term was employed by the parties to measure the damages to which the lessor was entitled. They were not dependent upon contingencies which render rent to accrue not a provable claim because not absolutely due at the time of the filing of the petition in bankruptcy. They were made absolutely payable simultaneously with the filing of the petition in bankruptcy. See Statement of Lowell, Circuit Judge, in Re Pettingill & Co. (D. C.) 137 F. 143, 146, where it is said: "For admission to proof, however, the claim need not arise before bankruptcy, nor need the contract be broken theretofore. It is sufficient for proof if the breach of contract and bankruptcy are coincident."

Judge Putnam, in Re Swift (C. C. A.) 112 F. 315, 321, in discussing whether a claim that did not arise until the filing of a petition in bankruptcy was a provable claim, uses this language: "The contract ripened simultaneously with the beginning of the proceedings in bankruptcy, as the consequence thereof in connection with the adjudication which followed. Of course, as everything related back to the filing of the petition, the ripening of the claim did not occur before it was filed, nor afterwards, but simultaneously with it, as already said." See, also, Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, where the Supreme Court quotes with approval the language of Judge Lowell in Re Pettingill & Co., supra; and also In re Mullings Clothing Co. (C. C. A.) 238 F. 58, 67.

█ It will be noted that the provision in question makes the lease to terminate and does not provide that it shall be forfeited upon the filing of a petition in bankruptcy. If forfeited it might call for some action upon the part of the lessor, but it is here provided that without any entry or action by the lessor "the lease shall become and be terminated." It cannot be said that the amount of damages to be recovered is so largely in excess of any actual damage that the lessor may suffer that it must have been intended as a penalty and its recovery would be unconscionable.

The term of the lease was short—two years. While there is nothing in the record to disclose that it was necessary for the lessor to expend considerable money in the preparation of the property for the use to which the lessee might wish it devoted, it is not an unreasonable inference that it did so. It is true that if the claim is allowed it will diminish the dividends to be paid to other creditors, but we are not concerned with this result. The only question presented upon this record is whether or not the claim made by the lessor is a provable one under section 63a(4) of the Bankruptcy Act of 1898 (11 USCA § 103 (a) (4).

█ It is contended by the trustee that the provision above cited was intended to operate as a penalty and not to fix the amount to be paid as liquidated damages. Whether an agreement to pay a fixed sum of money for a default in the performance of a contract is a penalty or liquidated damages depends upon the intention of the parties. Morrill v. Weeks, 70 N. H. 178, 180, 46 A. 32, and cases there cited; Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 669, 22 S. Ct. 240, 46 L. Ed. 366; United States v. Bethlehem Steel Co., 205 U. S. 105, 119, 37 S. Ct. 450, 51 L. Ed. 731; Guerin v. Stacy, 175 Mass. 595, 597, 56 N. E. 892; Lynde et al. v. Thompson, 2 Allen (Mass.) 456.

A well-known exception to this test is where the promise or agreement is to pay a large sum of money in the event of a default in the payment of a much smaller sum, in which case the law makes interest the measure of damages for failure to pay money when it is due, and will not permit parties to avoid the usury laws in this way. Mead v. Wheeler, 13 N. H. 351; Morrill v. Weeks, supra. In other words, such a contract, because of the usury laws, is construed as for a penalty or security beyond which damages cannot be recovered.

In the case now before us the contract or promise is not to pay a larger sum of money for a much smaller fixed sum, nor a sum as damages larger than is apparent from all the circumstances would cover actual damage; and its language plainly indicates that the parties intended that the sum agreed to be paid, in case of a breach, should be liquidated damages and not a penalty.

There is no evidence from which it could be found that the actual damages sustained

by the claimant (the lessor) were less than those agreed upon, and that those agreed upon were increased or made greater by padding those that would probably be sustained. [5] As the agreement is one for liquidated damages, can it be said to be invalid as being a fraud on the creditors of the bankrupt (the lessee), or a preferential transfer or conveyance?

There was no evidence that the bankrupt intended to defraud his creditors or that the claimant knew of such intention, if it existed. It is, therefore not void on that account.

It does not appear that the bankrupt was insolvent when the lease was made; and the covenant in regard to damages, if it could be said to effect a preferential transfer, was plainly not made within four months of the filing of the petition in bankruptcy.

The analogies suggested in the brief of the creditor arising in cases of leases of personal property, where by their terms the whole amount becomes due in case of default, are not applicable to real property where, by the terms of the lease, the parties have fixed with certainty the damages to be recovered upon its breach or, what amounts to the same thing, determined the method of their certain ascertainment.

The decree of the District Court is reversed, and the case is returned to that court for further action not inconsistent with this opinion, the appellant to recover costs to be paid from the assets of the bankrupt.

ANDERSON, Circuit Judge (dissenting). This is an important case. The doctrine now laid down by the majority opinion opens a wide door for schemes to nullify the Bankruptcy Act (11 USCA).

The real case is not stated in that opinion with entire accuracy and clarity. The record is short. The only evidence is the sworn proof of claim that the bankrupt is "justly and truly indebted * * * in the sum of five thousand and 00/.100 (5,000) dollars * * * damages for breach of lease in the amount of $5,000, that being the same as the amount of rent reserved in the lease from February 15, 1928 to May 15, 1929, the end of the term. The lease under which the bankrupt occupied provided that 'the filing of any petition in bankruptcy * * * by or against the Lessee shall be deemed to constitute a breach of this lease, and thereupon, ipso facto and without entry or other action by the Lessor, this lease shall become and be terminated; and, notwithstanding any other provisions of this lease the Lessor shall forthwith upon such termination be entitled to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term hereof.' "

The referee simply certified "that the facts were as set forth in said proof of debt." Neither the date nor the term of the lease is stated. For those my brethren resort to the briefs. There was no claim or ground for claim that the provision for damages equivalent to rent could be sustained as liquidated damages because "the term of the lease was short," and the lessor might have expended "considerable money" in adapting the leased property to the bankrupt's use. There is neither evidence nor presumption that the lessor made any such expenditure. The case presented and argued is that such provision for transmuting nonaccrued rent into damages makes a claim provable against the lessee's bankrupt estate: Whatever the term, whenever bankruptcy comes, and without regard to actual damage suffered. Appellant's learned counsel frankly and correctly conceded at the argument that, if this claim is provable, a like claim under a lease for 40 years, terminated by the lessee's bankruptcy at the end of one year, would be provable. And for present purposes a lease is no different from many other kinds of contracts. The ruling now made would support a claim arising under a long-term contract to furnish goods, deliveries and payments to be made periodically in installments—by inserting a stipulation that the bankruptcy of the purchaser should, ipso facto, be held a breach remitting the seller to damages equal to the price of the undelivered goods. The seller would keep his undelivered goods and have a provable claim equal to the selling price thereof. So also in a contract for personal services, running for years—the bankruptcy at any time of the employer may be made to remit the employé to a provable claim for damages equal to the remainder of his compensation for the whole period.

In this actual case and in both of the hypothetical cases, it is quite possible that the bankruptcy of the lessee, purchaser, or employer work no damage whatever to the other party. Here, for aught we know, the lessor may have immediately relet at an increased rent, after getting rent in advance for a month during which he had the premises. In the hypothetical case of the sale of goods, the seller may have resold at a higher price the goods contracted to the bankrupt. In the hypothetical case of personal services, the employé may have profited from the

termination of his contract and the resultant opportunity for more lucrative employment. If, in the absence of all evidence, there is any presumption that the breach of such contracts works any damage at all, there is certainly neither presumption nor probability that such damage equals the balance accruing under the contracts thus terminated, so that the supposititious victim of a breach is released from his recurrent obligations thereunder. In other words, such stipulations ground claims for damages purely artificial and having no sensible or approximate relation to the realities of the varying situations; in dominant aspects they provide for penalties assessable, not upon the party in default, but upon his creditors.

Illustrations might be multiplied indefinitely. Compare Van Iderstine v. National Bank, 227 U. S. 575, 582, 33 S. Ct. 343, 57 L. Ed. 652; 4 Remington (3d Ed.) § 1527.

In my view, such contracts are, on their face and in essential nature, in fraud of future creditors of the prospective bankrupt. They are agreements by prospective bankrupts to give the other parties to these contracts dividends belonging, in whole or in large part, to the bankrupts' real creditors; they import intent to defraud. They contemplate padding claims in order to prevent other creditors from having the benefit of the equality provisions of the Bankruptcy Act. In effect, they provide for proving false claims; for prospective bankrupt and creditor to agree that the creditor's claim shall be magnified in order to give him assets belonging beneficially to other creditors has exactly the same effect on the rights of those other creditors as creating a claim ab initio from nothing. Analyzed, both are attempts to get other people's money by false representations.

In another aspect this provision was for a penalty—not for liquidated damages. The intent of the parties is only one test in the ordinary case involving only the rights of the parties to the agreement—frequently disregarded if the result thus reached be illegal or unconscionable. 17 C. J. p. 936, and cases cited. But when, as here, the intent is, not to pay from the property of the party breaking the contract, but from property of others, the intent condemns the contract; it does not validate it. The cases cited in the majority opinion rest on the principle that parties sui juris may contract to do as they like with their own. In this case the parties undertook to contract for damages payable from an estate belonging beneficially in no part to the breaker of the contract; on ad-

judication the entire estate vested beneficially in the creditors.

In another aspect, this is nothing but an agreement for proving nonaccruing rent by simply calling it damages; it assumes that the courts may be beguiled by an alias into disregarding realities. I can find no authority whatever for upholding such an obvious scheme of fraud upon the Bankruptcy Act.