## In re BARTON CO.

District Court, D. New Hampshire. June 1, 1929.

No. 3366.

P. H. Sullivan, of Manchester, N. H., for claimant.

Robert P. Bingham, of Manchester, N. H., for trustee.

MORRIS, District Judge. This is a petition to review the findings and order of the referee in bankruptcy upon the application of Harry G. Clough, of Manchester, N. H., to liquidate and allow his claim against the Barton Company, bankrupt, for damages for failure to fulfill the conditions of a written lease.

Clough filed a claim for allowance with the lreferee, amounting to $28,454.50. The referee disallowed the entire claim, and the matter comes before the court on the creditor's petition for review.

The Barton Company is a corporation organized under the laws of the state of New Hampshire, which did a large general merchandise business in Manchester, N. H. It was adjudged a bankrupt May 3, 1928.

The creditor's claim arises under the conditions of a written lease, entered into between the Barton Company and Harry G. Clough, on the 11th day of December, 1911, by the provisions of which Clough, the lessor, leased to the bankrupt, all of the second, third, and fourth floors of the Clough Block at 24 Manchester street, in said Manchester; the material provisions of which effecting this controversy, are as follows:

"And in consideration of aforesaid the said lessor hereby grants to said lessee the right to install an elevator in place of the stairway leading from said building to Nutfield lane and also the right to remove and change the partitions and stairways on said floors upon condition that said lessee will properly support said floors during the interval said changes are being made, and thereafter during the term of this lease, and during said term will not disturb nor inconvenience the tenants of the first floor of said building and upon the further condition that said lessee, his successors and assigns, shall renew and replace said partitions and also all plumbing, wiring, piping and fixtures as they now exist on said floors, before the expiration or other termination of this lease, or its renewal if said option is exercised, and also upon the further condition that said lessee shall give to said lessor a suitable bond to save him harmless against any loss or damage caused to himself or others from the making of said changes during said interval."

The lease provided for a monthly rental of $125, payable on the 1st day of each month during the term of the lease. There was also a provision that the lessor might enter to view and make improvement, and expel the lessee if it shall fail to pay the rent as aforesaid, or make or suffer any waste in or upon said premises, and that the lessee will peaceably and quietly quit and deliver up the said premises to the said lessor or his attorney at the expiration or other termination of the lease.

Sections 6 and 9 of chapter 357, Public Laws of New Hampshire 1926, provides as follows:

"Section 6. *Violation of Lease.* If the lessee violates the condition of a written lease notice to quit at the end of seven days shall be sufficient and equivalent to an entry for condition broken."

"Section 9. *Payment after Notice.* No forfeiture shall be incurred for nonpayment of rent if the lessee before the expiration of the notice shall pay or tender to the lessor all rent in arrears together with $5 as damages and costs occasioned by his default."

It appears from testimony before the court that the lessor caused a notice to quit to be served upon the bankrupt May 2, 1928.

On May 3, 1928, a petition in bankruptcy was filed against the Barton Company, and on the same date it was adjudicated a bankrupt, and Allen M. Wilson was appointed and qualified as receiver.

It appears that Wilson, on the 2d day of May, acting as counsel for Clough, the lessor, drafted and caused to be served the notice to quit. Before the expiration of the seven days' notice, the receiver made arrangements satisfactory to the lessor to pay all rent in arrears. Just when it was paid does not appear in the testimony, but the date is immaterial, because the lessor makes no question but that it was seasonably paid. He does question the payment of the $5.

He testified that it was never paid, although he had demanded it from Wilson. Wilson testified that he understood the $5 was to be credited on his personal bill against Clough.

I find upon the testimony that the lessor, Clough, did not at the time seriously question the payment of the $5, or claim that its nonpayment was essential to a continuance of the lease. He understood, as did Wilson, the receiver, that the lease might be continued for a reasonable length of time, within which it might be determined whether the lease was valuable as an asset of the bankrupt estate. Clough made no objection to its continuance.

It was in fact continued until October 1, 1928, the receiver paying all rent due, when the following notice was sent:

"September 28, 1928.

"Mr. Harry G. Clough, Manchester, N. H. Dear Mr. Clough: As trustee of the Barton Company, I am giving up the tenancy of the

Clough Block, so called, on Manchester Street, on October 1, 1928.

"Very truly yours, Allan M. Wilson."

No effort was made, either by the bankrupt or the receiver, to restore the leased premises as provided in the lease. The lessor claims damages to the amount of the cost of replacement. Up to the time that he filed his claim for allowance, the premises had not been repaired, and the exact amount of costs had not been determined, but were estimated by persons having knowledge of such matters at $28,454.50.

The referee in bankruptcy disallowed the entire claim, upon the theory that it was not a provable debt against the estate.

The referee's disallowance appears to be based upon the authority of the following cases: In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270; Slocum v. Soliday (C. C. A.) 183 F. 410; McDonnell v. Woods (C. C. A.) 298 F. 434; In re Munsie (D. C.) 32 F.(2d) 304, 13 A. B. R. (N. S.) 285; In re A. B. Flory Co. (D. C.) 13 A. B. R. (N. S.) 344.

In all of the cases cited, the question determined appears to have been whether or not a claim for rent accruing after the filing of a petition in bankruptcy, or damages resulting from a termination of the lease by bankruptcy, were provable claims.

As said by Judge Johnson, in the case of Taylor v. Kothe (C. C. A.) 30 F.(2d) 77, 13 A. B. R. 270: "It is well-settled law in this circuit that a claim for rent accruing after the filing of a petition in bankruptcy is not a provable claim."

But it seems to me that we must differentiate the claim in the case at bar from the cases above cited. In this case the claim of the lessor is founded upon a contract to restore the leased premises upon the termination of the lease, whether terminated by its expiration or from any other cause or causes. It falls within the provisions of section 63a(4) of the Bankruptcy Act, 11 USCA § 103(a) (4), as a claim founded upon a contract express or implied which may be liquidated under Bankruptcy Act § 63b, 11 USCA § 103 (b), which provides: "Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate."

The claim of the lessor was a fixed claim, based upon contract, and not a contingent claim, falling within the classes of nonprovable claims.

The only possible contingency as to whether or not it would be a provable claim against the bankrupt estate depended upon the sale of the lease as an asset of the estate. Under those circumstances the claim would be satisfied by the bankrupt, or the trustee of the bankrupt, and of course no provable claim could then accrue against the estate. In the case of Central Trust Company v. Chicago Auditorium, 240 U. S. 581, 589, 36 S. Ct. 412, 414, 60 L. Ed. 811, L. R. A. 1917B, 580, Mr. Justice Pitney says:

"It is no longer open to question in this court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach."

There can be no question but that the obligation to restore the premises existed at the time of the filing of the petition in bankruptcy.

The bankrupt disabled himself from the performance of his contract. A right of action accrued for damages simultaneously with the filing of the petition.

His claim against the bankrupt became a matter of liquidation under section 63b of the Bankruptcy Act. See In re Swift (C. C. A.) 112 F. 315; In re Stern (C. C. A.) 116 F. 604; In re Neff (C. C. A.), 157 F. 57; In re Schultz & Guthrie (D. C.) 235 F. 907.

The case is remanded to the referee in bankruptcy, who is hereby appointed special master to determine the cost of replacement, and, having determined the same, to allow the claim against the bankrupt estate.