## In re METROPOLITAN CHAIN STORES, Inc. (two cases).

## FIRST NAT. BANK OF CANTON, OHIO, v. IRVING TRUST CO.

### KOLP et al. v. SAME.

### No. 307.

Circuit Court of Appeals, Second Circuit.

July 17, 1933.

SWAN, Circuit Judge, dissenting.

Zalkin & Cohen, of New York City (Israel Akselrod, of New York City, of counsel), for appellee.

Joseph F. Mann, of New York City (Donald Adams Powell, of New York City, of counsel), for National Association of Owners and Managers, amicus curiæ.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellants owned parcels of realty, leased to the bankrupt, and present claims in an amount sufficient to restore the premises altered by the bankrupt, as lessee, upon the expiration of the lease by bankruptcy. The leases are identical in terms. That held by the First National Bank of Canton provides that the lessee could alter the premises, and that at the termination of the lease or any expiration or renewal thereof the lessee would restore the premises to their former condition unless directed not to do so by the lessor. Article XIII of the lease provides that the lessor could re-enter on ten days' notice if the conditions were breached, or could recover damages for a breach by the lessee without forfeiture of the lease, and provides that the lease "shall become null and void and be at an end at the election of the Lessor" in the event of bankruptcy and "in the event that on demand in writing by Lessor" the trustee does not pay the rent due within 24 hours.

The appellee asserts that appellants' claims do not sufficiently show an exercise of the option to terminate the lease. In Central Trust Co. v. Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B,

486

580, it was held that bankruptcy was an anticipatory breach of an executory contract giving rise to a provable claim. It distinguished a number of cases arising out of the relation of landlord and tenant where it was held that future rents and other obligations of the lessee were not provable against a bankrupt estate. The cases disclose that some obligations of the lessee found in a lease, unlike rents unaccrued when the petition is filed, are provable. In re Marshall's Garage, 63 F.(2d) 759 (C. C. A. 2); Trust Co. of Ga. v. Whitehall Holding Co., 53 F.(2d) 635 (C. C. A. 5); In re Desnoyers Shoe Co., 227 F. 401 (C. C. A. 7); In re Barton (D. C.) 34 F.(2d) 517. In each case it must be determined whether the claim is so contingent and speculative as to make it uncertain whether liability would ever attach. As pointed out in the case of In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270 (C. C. A. 2), the claim for future rent is fatally contingent. And in the case of In re Jorolemon-Oliver Co., 213 F. 625 (C. C. A. 2), this court applied the same rule as the Roth Case and held that certain claims under a lease of machinery were not provable because the lease was terminated, not by bankruptcy, but by the option of the landlord who "served notice upon the trustee in bankruptcy terminating the leases." The claims there disallowed were not for future rents, but for repairs, freight, and return charges on the leased chattels. In the case of In re Desnoyers Shoe Co., 227 F. 401 (C. C. A. 7), the court, Mack, J., allowed claims similar to those rejected in the Jorolemon Case, supra. The court said that in the Jorolemon Case the lease was terminated by the notice after petition filed, but that under the contract before it the lease was terminated upon bankruptcy at the option of the lessor manifested after bankruptcy, and therefore the claim was fixed and absolute at the time of bankruptcy. In the instant case, the lease provided that it would become null and void at the election of the lessor in the event of bankruptcy and in the event that on demand in writing the trustee did not pay the arrears of rent and rent for the term of his occupancy. Even if it be assumed that the lessor exercised the election as provided in the lease, its contingency on the failure of the trustee to pay rent demanded by the lessor prevents the claim from being considered as fixed and absolute when the petition is filed. The claim would become certain only upon the trustee's refusal to pay back rent. This refusal would be after bankruptcy necessarily, but the right to file a claim should not

turn upon the interpretation of the words of the option provision of the lease as providing for termination coincident with or subsequent to bankruptcy. That is exemplified in the Desnoyers decision, supra. If the election is seasonably asserted, coincident with or subsequent to the petition in bankruptcy, our decision should turn upon the contingency or absolute character of the claim asserted as of the time of the petition in bankruptcy. It should rest upon the character of the claim; that is, the promise to restore the premises as at the time of bankruptcy, even though the option be considered as exercised upon the trustee's refusal to pay rent after bankruptcy. Covenants in leases to restore property pending termination or expiration have been held the basis of claims provable in bankruptcy on the theory that these covenants were separable from promises to pay future rents and were fixed and absolute. Trust Co. of Ga. v. Whitehall Holding Co., 53 F.(2d) 635 (C. C. A. 5); In re Barton (D. C.) 34 F.(2d) 517.

In McDonnell v. Woods, 298 F. 434 (C. C. A. 1), the claim for cost of restoration of the premises was disallowed on an interpretation of the contract that the right arose only on re-entry. It was after bankruptcy. But in Re Barton, 34 F.(2d) 517 (D. C. D. N. H.), the right to restore arose on the termination of the lease by means other than re-entry after bankruptcy. The lease was terminated by notice given the day before bankruptcy. By statute such notice to quit "at the end of seven days" was equivalent to re-entry. While it is true that, at the time, the claim may not be said to have been fixed when the petition was filed, still the time of bankruptcy marked the date when the obligation was absolute to make the alterations required by the tenant under the contract. The claim for restoration of property should be allowed on the more liberal theory expressed in Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028. The claim is unlike unaccrued rents, and the very technical and undesirable rule of having the question turn on whether the claim accrued on the day when the petition was filed or a few days later should be avoided. In re Marshall's Garage, 63 F.(2d) 759 (C. C. A. 2).

The decree is reversed.

L. HAND, Circuit Judge, concurring with opinion.

SWAN, Circuit Judge, dissenting with opinion.

L. HAND, Circuit Judge (concurring).

In Manhattan Properties, Inc., v. Irving Trust Co. (C. C. A.) 66 F.(2d) 470, handed down herewith, I have said what I thought about the question which underlies this appeal, and that case was stronger for the trustee than this. I accept it as a fact, though the record does not show it, that the trustee did not assume the lease; if so, the bankrupt continued as tenant, for the term did not end. But the lessee was subject to re-entry for breaches of condition, one of which was a failure to pay rent, though the lease contained no covenant reserving damages to the lessor in that event, either by way of liquidated damages, or actual damages seriatim as the installments fell due. I assume therefore that no future rent was recoverable, the probabilities all being that the lessee would re-enter and rent end with the term. However, we have not that question before us, but whether the covenant to restore the premises, anticipatorily broken by the bankruptcy, may be the basis of a provable claim.

Upon petition filed such a claim was contingent both in obligation and in amount. The lessor might be evicted by paramount title, or the premises might be destroyed; in either case the lessee was relieved. The trustee might assume it and pay the back rent. Again, no one could say when the lessor would re-enter, or theoretically whether he would re-enter at all; and the cost of restoration would depend upon when he did; in any event the time during which the payment should be discounted was as yet uncertain. But if, as I think, contingency of the claim is not an absolute bar, for the reasons I have given in Manhattan Properties, Inc., v. Irving Trust Co., all these questions go into the realm of more or less. It may be when the claim is liquidated they will have been determined; probably the lessor has already re-entered and the time for performance of the covenant to restore is past due. If not, and if he has not re-entered before liquidation is complete, some approximation of the damages must be made, the objections to which do not seem to me practically insuperable. I had rather impose such hazards upon the creditors, so far as they are not actuarially possible of calculation, than to dismiss the lessor with nothing.

I acknowledge that such a claim may be too uncertain to be dealt with at all; a mere gamble to which the creditors are not obliged to submit, and I agree that it is impossible to say a priori how great the uncertainties must be to make it so. All that we need do here is to hold that they are too remote to make the claim bad in toto. The controlling point to my mind is that the contingency of the claim upon petition filed, either in obligation or amount, is no longer final; unless we are to make a difference between realty and personalty, which I would not do. For these reasons I think that the claim ought to have gone to liquidation and that the order should be reversed.

SWAN, Circuit Judge (dissenting).

The bankrupt occupied adjoining properties in Canton, Ohio, under two leases which were identical in all material respects. The respective lessors in these leases are the appellants. Each lease recited that, pursuant to permission granted by the lessor in a similar instrument of earlier date, the lessee had made certain alterations in the building, and contained an agreement that the lessee should "at the termination of this lease or any extension or renewal" thereof restore the premises to the same condition as they were on March 23, 1920, unless directed in writing by the lessor and by the owners of the adjoining property not to do so. Each lease also contained the following clause:

"This lease shall become null and void and be at an end at the election of the Lessor in the event that the Lessee's interest in this lease shall be assigned to or by operation of law or otherwise shall pass to or be held by any assignee for the benefit of the creditors, or any trustee in bankruptcy or any receiver of the Lessee, and in the event that on demand in writing by Lessor, any such assignee or trustee in bankruptcy or any receiver does not within twenty-four (24) hours, after the presentation of said demand, pay all back rent due hereunder and agree to pay the rent provided for hereunder during the term that such assignee or trustee in bankruptcy or any receiver is in possession of the property leased hereunder."

There was also a provision for termination of the lease by re-entry if the lessee should default in payment of rent, taxes, etc., and such default should continue for ten days after service of notice thereof upon the lessee. In January, 1931, extension agreements were entered into between the lessee and the respective lessors extending the term to January 31, 1934.

The claims filed by the appellants allege as to their respective leases that "said lease was in full force and effect on January 12, 1932, the date when the adjudication herein was made"; they also allege the approxi-

488

mate cost of restoring the premises to the condition required by the covenant of the lessee; and they pray that the claim may be liquidated and then allowed.

The covenant upon which these claims are founded binds the lessee to restore the former condition of the premises "at the termination" of the lease. We shall assume that this includes a termination brought about by the lessor pursuant to the provisions of the lease as well as a termination by expiration of the term demised. Cf. In re Arnstein, 101 F. 706, 709 (D. C. S. D. N. Y.). So long as the lease remains outstanding, the lessee's obligation to restore is not an immediate duty, nor is it an absolute one, for, if the building should be destroyed "by fire or the elements at any time during the last year of the term," it is provided that the lease shall end and rent shall cease, and it is implicit that neither party is obliged to rebuild. The appellants' brief presents their case on the assumption that bankruptcy terminated the lease, and created an immediate cause of action for the cost of restoring the premises to their former condition; but this is plainly a misconstruction of its terms. The filing of a petition in bankruptcy does not end the lease, either ipso facto or at the lessor's election; nor does adjudication. Only if the lessee's interest in the lease "shall pass to or be held by" the trustee in bankruptcy is the lease to be at an end, provided the lessor so elects and provided further that the trustee shall fail to pay, within twenty-four hours after written demand, all back rent due and agree to pay "the rent provided for hereunder" during the time the trustee is in possession. A bankrupt's leasehold interest does not pass to, nor is it held by, his trustee in bankruptcy, unless the latter elects to assume the lease. Hence if the trustee renounces, the lessors have no power to end the lease under the above-quoted provision. In that event the lease would continue outstanding in the bankrupt until the lessor could terminate it by re-entry for nonpayment of rent or some other default of the lessee which should continue for ten days after notice thereof was served on the lessee. The record is wholly silent as to termination of the lease by either of the methods above discussed. So far as appears, the trustee may have assumed the lease and performed everything required by it, or the trustee may have renounced it and the lease may be still outstanding in the bankrupt. However, in their reply brief the appellants state that they "did make the demand required by the leases, and the trustee in fact repudiated them," and they urge that they

should be allowed to amend their claims, if necessary, and prove these facts together with the liquidation of their damages. We shall assume for purposes of further discussion that the leases have been or could still be terminated by the lessors in one or the other of the methods provided for.

When the petition in bankruptcy was filed, which is the critical date as of which a provable claim must exist (Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664), it is apparent that the claim was contingent. The date when it would become due was contingent on termination of the lease, and if, before termination, the tenant should be evicted by title paramount or the building be destroyed within the last year of the term, no liability would ever arise. Claims based on similar covenants to restore were disallowed in McDonnell v. Woods, 298 F. 434 (C. C. A. 1), and In re Arnstein, 101 F. 706 (D. C. S. D. N. Y.). See, also, In re Schulte United, 2 F. Supp. 285 (D. C. S. D. N. Y.); In re Jorolemon-Oliver Co., 213 F. 625 (C. C. A. 2). Compare In re Barton Co., 34 F.(2d) 517 (D. C. D. N. H.); Trust Co. of Georgia v. Whitehall Holding Co., 53 F.(2d) 635 (C. C. A. 5); In re Desnoyers Shoe Co., 227 F. 401, 402 (C. C. A. 7). The two cases last cited are perhaps distinguishable from those where the claims were held nonprovable; in the Whitehall Case it is said that the contract contained clauses "voiding the lease in the event of bankruptcy," and in the Desnoyers Shoe Co. Case the lease was to cease at the option of the lessor "if the lessee becomes insolvent or bankrupt."

The cases which have denied provability to claims based upon a covenant to restore alterations at the termination or expiration of a lease have stressed the language of section 63a (1) of the Bankruptcy Act, 11 US CA § 103 (a) (1) requiring the bankrupt's debt to be "a fixed liability * * * absolutely owing at the time of the filing of the petition against him, whether then payable or not." McDonnell v. Woods, supra, was decided after the Supreme Court had announced in Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, the doctrine that bankruptcy is an anticipatory breach of the bankrupt's executory contracts, although it gives little or no consideration to the language of section 63a (4), 11 USCA § 103 (a) (4) which permits proof of a debt "founded * * * upon a contract express or implied." That claims provable under the latter subdivision need not be abso-

lutely owing at the time of the filing of the petition is made clear by the recent opinion of Mr. Justice Stone in Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028. It was there held that the liability of a bankrupt as indorser of a promissory note was provable although the note had not matured at the time of adjudication. The bankrupt's liability was therefore contingent on nonpayment at maturity of the note by the maker, who was insolvent, and on presentment and notice of dishonor at maturity by the claimant. The opinion, at page 277 of 283 U. S., 51 S. Ct. 390, 391, disapproves, with a reference to In re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270 (C. C. A. 2), the argument that the limitation in subdivision a (1) of section 63 must be carried over into subdivision a (4), and at page 278 of 283 U. S., 51 S. Ct. 390, 392, it is said:

"That some contingent claims are deemed not provable does not militate against this conclusion. The contingency of the bankrupt's obligation may be such as to render any claim upon it incapable of proof. It may be one beyond the control of the creditor, and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach. In re Merrill & Baker (C. C. A.) 186 F. 312. Such a claim could not be proved under the Act of 1841 although in terms permitting proof of contingent claims. Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232. Or, the contingency may be such as to make any valuation of the claim impossible, even though liability has attached. Of this latter class was the claim upon the bankrupt's contract to pay his divorced wife a specified amount annually so long as she should remain unmarried, proof of which was for that reason rejected in Dunbar v. Dunbar, supra [190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084]; see Atkins v. Wilcox (C. C. A.) 105 F. 595, 53 L. R. A. 118.

"But the liability of an indorser is of neither class. Its amount is certain; and the contingency of notice of dishonor to the indorser is within the control of the creditor, so as to place his claim, so far as its certainty of accrual and its susceptibility of liquidation are concerned, upon the same footing as the contract of indemnity which was held provable in Williams v. U. S. Fidelity Co., supra [236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713], although the claimant had done nothing at the time of the bankruptcy to satisfy the liability for which the indemnity was given. See, also, Central Trust Co. v. Chicago Auditorium, supra, pages 593, 594 of 240 U. S., 36 S. Ct. 412 [60 L. Ed. 811, L. R. A. 1917B, 580]."

In a scholarly periodical article, "Rent Claims in Bankruptcy," 33 Col. L. Rev. 313, it is urged that the liberal attitude evinced by the Supreme Court with respect to the allowance of contingent claims against bankrupt indorsers of unmatured commercial paper might well induce the lower federal courts to modify their rulings as to claims upon leases. But until so instructed by the court of final authority we are unwilling to press the decision of Maynard v. Elliott so far. The Auditorium opinion expressly excluded application of the anticipatory breach doctrine to covenants to pay rent for land (240 U. S. 581, 590, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580), and the distinction was again noted in Wm. Filene's Sons Co. v. Weed, 245 U. S. 597, 601, 38 S. Ct. 211, 62 L. Ed. 497. See, also, Wells v. Twenty-First Street Realty Co., 12 F.(2d) 237 (C. C. A. 6). We still regard claims for future rent for land as too contingent to be proved against the bankrupt lessee. See In re Metropolitan Chain Stores, Inc. (Malavazos v. Irving Trust Co.) 66 F.(2d) 482 (C. C. A.) and Manhattan Properties, Inc., v. Irving Trust Co. (C. C. A.) 66 F.(2d) 470, handed down herewith. It follows that a lease of real estate is not terminated by bankruptcy, and a bankrupt lessee may still be held for future rent, and, if he pays it, may still continue to occupy under a lease which his trustee has elected not to assume. The likelihood of this occurring when the lessee is a corporation may be remote, but, if the lessee were an individual and the leased premises his dwelling house, it might well happen. Suppose that such a lease contained a covenant similar to the one involved in the case at bar, and that the bankrupt lessee continued to occupy his dwelling house and pay rent after his trustee had renounced. Could his landlord, although the lease had not been terminated and the tenant was still in possession, claim from the bankrupt estate the cost of restoring the alterations which the tenant had promised to pay "at the termination of the lease"? It seems to the writer of this opinion that the answer must be in the negative, and must be the same whether the tenant is an individual or a corporation, and whether the leased premises be a dwelling house or business property. So long as the lease remains outstanding, the liability to restore the former condition remains contingent; it may never accrue, and is incapable of present valuation; nor is the contingency within the control of the claimant, as is the

giving of notice of dishonor to a bankrupt indorser. The duty of restoration is so conditioned upon the cessation of occupation under the lease that the covenant to restore and the covenant to pay rent are not separable. Cf. *In re Marshall's Garage*, 63 F.(2d) 759 (C. C. A. 2). In my opinion, therefore, the District Court properly expunged the claims of the appellants, and the order should be affirmed.