## In re UNITED CIGAR STORES CO. OF AMERICA.

## CLOUDY REALTY CORPORATION v. IRVING TRUST CO.

### No. 227.

Circuit Court of Appeals, Second Circuit.

April 2, 1934.

Weinstein & Levinson, of New York City (Frank Weinstein and Samuel J. Levinson, both of New York City, of counsel), for appellant Cloudy Realty Corporation.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Wm. D. Whitney and R. L. Gilpatric, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The bankrupt held premises known as No. 557 Eighth avenue, in Manhattan, city of New York, under a lease from the owners in fee which was executed November 14, 1919. This lease gave to the lessors the option to cancel the lease and take possession of the demised premises if the lessee became bankrupt. It provided also that, if the lessors exercised such option, the parties would be released from all obligations under the lease. By express agreement, it was made nonassignable. The term began Jan-

uary 1, 1920, and ended December 31, 1940, and the lessee agreed to pay a stipulated annual rental in equal monthly installments in advance during the term.

On April 11, 1930, and while this lease was in full force and effect, the lessee (the bankrupt) sublet the premises to the Eighth Avenue & 38th Street Corporation for the remainder of the term less one day. That is, the sublease expired on December 30, 1940. This sublease was expressly made subject to the terms and conditions of the lease under which the sublessor held the property. The reserved rent was the same as that payable by the sublessor under the head lease, and in addition the sublessee agreed "as a special consideration for the execution and delivery of this lease by the Landlord, to pay over to the Landlord upon the execution and delivery of the lease, the sum of Thirty-seven Thousand Dollars ($37,000.00) which sum shall be and be considered to be immediately earned upon execution and delivery of this lease." The special consideration was paid to the sublessor as agreed. On May 8, 1930, the Eighth Avenue & 38th Street Corporation assigned the sublease to the Cloudy Realty Corporation, the appellant.

On August 29, 1932, United Cigar Stores Corporation of America, the original lessee and the sublessor, filed its voluntary petition in bankruptcy in the District Court for the Southern District of New York and was adjudicated a bankrupt the same day. The Irving Trust Company was appointed and qualified as receiver. The appellant was then in possession of the premises under the sublease and was not in default.

On September 8, 1932, the then owner of the fee and landlord under the head lease notified the bankrupt and its receiver in bankruptcy that he exercised his option to cancel and terminate the head lease in accordance with its terms because of the bankruptcy of the United Cigar Stores of America. He demanded possession of the premises on or before September 12, 1932. On the latter date proceedings, not now necessary to set forth, were initiated which resulted in a cancellation of the head lease and the surrender of the premises to the owner on September 29, 1932.

Thereafter, the appellant filed its claim in the bankruptcy proceedings based (1) upon its claimed right to the return of the special consideration of $37,000 paid to the bankrupt at the time the sublease was executed or such part of it as should be apportioned to the unexpired term of the sublease; and (2) for $25,000 as its general damages sustained by the premature destruction of the sublease when the head lease fell because the owner elected to cancel after the bankruptcy of the United Cigar Stores of America. The referee disallowed and expunged the claim in toto. The District Court sustained the action of the referee on review, and from this order the claimant has appealed.

■ So far as the claim for return of any part of the special consideration is concerned, we think the terms of the sublease must control. The parties (the appellant's assignor and the bankrupt) agreed that this sum was paid "as a special consideration for the execution and delivery of this lease" and that it was "immediately earned upon the execution and delivery of this lease." It was the price paid for the lease itself, and, when that was executed and delivered to the appellant's assignor, it received what it paid for. We have now nothing to do with the value of what the appellant's assignor got for its special payment. It is enough to say that it made the bargain and got whatever rights it took under the document for which it agreed to and did pay the special consideration. The theory of unjust enrichment which the appellant attempts to invoke will not apply to such a situation until it is extended to afford a remedy to one who has merely paid more for a thing than subsequent events prove it to be worth. It was satisfied with the lease when it got it, and there is no suggestion that it did not understand fully what it was getting. The language used to make it plain that this so-called special consideration was thereafter to belong to the sublessor absolutely may have been chosen to avoid any possible claim by the owner that the clause in the head lease prohibiting assignment had been violated. However that may be, when the parties agreed that the special consideration was "immediately earned upon the execution and delivery of this lease," they used words ill suited to the assignment of a lease and well suited to show that the money was paid to obtain the obligations of the bankrupt under the sublease, subject of course to the additional obligations of the sublessee, instead of the rights of the bankrupt under the head lease. Those obligations of the bankrupt have not all been performed, and consequently a cause of action may have arisen in favor of the appellant against the bankrupt for the breach of the covenant of quiet enjoyment, but that is distinct from

any claimed right to a return in whole or in part of the price paid for the lease in the first instance. Payments made and to be made by a lessee in accordance with the terms of a lease may be rent in part and in part for something else. Such payments are not necessarily indivisible. In re Marshall's Garage, Inc. (C. C. A.) 63 F.(2d) 759. That part which is paid solely for the execution and delivery of a lease is not recoverable. In re Sun Drug Co. (C. C. A.) 4 F.(2d) 843.

The claim for damages for the breach of the lease stands differently. The bankruptcy of the sublessor was the exciting cause of the cancellation of the main lease which carried the sublease down with it. Such damages grow out of contractual relations and are provable in bankruptcy if not so contingent as to be merely speculative. Compare Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. — (decided February 5, 1934) ; Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028. It is not fatal to the claim that the bankruptcy which is the cause of the breach occurs first so that strictly in point of time there is no breach when the petition in bankruptcy is filed. Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811; In re Metropolitan Chain Stores (C. C. A.) 66 F.(2d) 485. But, unless the one must follow the other as a necessary consequence, there is no such certainty of breach when the petition in bankruptcy is filed that the contract can be treated as then broken. In this instance the sublessor's covenant of quiet enjoyment was not broken when the petition in bankruptcy was filed. The bankrupt was the landlord of the claimant and the tenant of the owner. As landlord the bankrupt did not interfere with the claimant's possession of the premises, but as tenant of the owner the bankrupt did give the owner cause to retake the premises and oust the claimant. At the time the petition in bankruptcy was filed, however, there was no certainty that the owner would exercise the option to cancel the head lease. So the claimant cannot rely on a breach of the sublease as of the time the petition was filed, but instead must rely on one which occurred subsequently when the overlandlord entered. Not until that took place was any obligation of the sublessor to indemnify the sublessee (the claimant) created; and, as that was after petition filed and was the result of the overlandlord's election to exercise his option to cancel the head lease, which required ac-

tion by the overlandlord in addition to and following the bankruptcy of the sublessor, the bankrupt was not a debtor of the claimant as of the time of the filing of the petition. We merely suggest the question of ultimate liability, however. Nothing now before us requires a decision as to what may be recoverable. As the covenant of the sublessor for quiet enjoyment was against its own defaults only, attention may well be directed to Ganz v. Clark, 252 N. Y. 92, 169 N. E. 100; and Thorley v. Pabst Brewing Co. (C. C. A.) 179 F. 338. Had the overlandlord elected instead to hold the sublessee to its contract, the bankrupt would have been under no obligation to this claimant at all, and we decide no more at present than that, as the future action of the overlandlord was an unknown and unpredictable factor at the time of bankruptcy the claim, as of the time the petition was filed, was too uncertain and contingent to be provable in bankruptcy. Compare Manhattan Properties, Inc., v. Irving Trust Co., supra. As to provability, the present claim is like that in the case of In re Pennewell (C. C. A.) 119 F. 139, where the sublessee was dispossessed by the trustee in bankruptcy of the sublessor who had sublet contrary to a stipulation in the head lease. It was held that such action gave to the sublessee no claim provable against the bankrupt estate of the sublessor.

Affirmed.